**Harold Richard WESTERHOLD and Marjorie Ann Lanemann Westerhold, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 757–85C.

United States Court of Federal Claims.

April 27, 1993.

Jack F. Allen, Clayton, MO, for plaintiffs.

Samuel C. Watkins, Washington, DC, with whom was Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Sharon Y. Eubanks, Asst. Director, for defendant.

## OPINION

SMITH, Chief Judge.

This case involves a government contractor's claim for an equitable adjustment to a contract with the General Services Administration (GSA). The contract was for the construction of two overhead walkways at the Federal Center in Saint Louis, Missouri, between two sets of buildings at the Center. Plaintiffs, Harold Richard Westerhold and Marjorie Ann Lanemann Westerhold, have performed the contract and pursuant to 41 U.S.C. § 609(a)(1) (1988), appeal from the contracting officer's (CO) final decision denying their request for relief. After a two day trial, and a thorough consideration of the legal issues before it, the court finds that the plaintiffs partially prevail on the merits. However, plaintiffs have failed to prove any delay damages. As a result of representations at trial, the court will allow plaintiffs to submit a status report supporting a refund of any previously paid liquidated damages not to exceed $6,100.

## FACTS

On October 22, 1982, the contract at issue here was awarded to Dimarco Corporation (Dimarco).[1] The GSA issued a notice to proceed on November 22, 1982, with a scheduled completion date 180 days later (May 23, 1983). The original contract price was the lump sum of $310,002.00. All of the plans, specifications, and other contract documents were prepared by defendant.

Plaintiffs claim that in November of 1982 while Dimarco was preparing the steel fabrication drawings, using the plans and specifications of the contract, it noticed that there was no provision in any of the contract documents for any camber[2] on the longitudinal axes of either of the two walkways. On December 7, 1982, when Dimar-

co sent its steel fabrication drawings to defendant for approval, plaintiffs claim that they expected defendant to make a provision for longitudinal camber. However, on December 29, 1982, defendant returned to Dimarco its steel fabrication drawings approved but without any provisions for longitudinal camber. Plaintiff, Harold Westerhold, alleged that he contacted defendant by telephone to raise the camber question, but received no definitive response. Defendant disputed that this conversation occurred.

On January 10, 1983, Dimarco sent its purchase order to Hammert's Iron Works (Hammert's) for the purchase of the required structural steel, however, the steel contained no provision for any longitudinal camber. Dimarco wrote defendant regarding its concern for the lack of camber on February 3, 1983, and on February 15, 1983, defendant notified plaintiffs that two inches of camber was to be built into the trusses of the walkways. However, defendant refused to admit that the added camber justified any contract modification. When notified that camber was needed, Hammert's agreed to provide the camber in the appropriate pieces of steel if the price for the steel was increased by $4,500.00, there was no guaranteed delivery date, and that Dimarco make no claim against Hammert's for any liquidated damages. Plaintiffs allege that defendant threatened to cancel Dimarco's contract if it did not show appropriate activity on the job site. Therefore, Dimarco argues it was forced to do part of the steel fabrication at the job site, and it cancelled its contract with Hammert's.

Dimarco then notified defendant that with the added charges for overhead, labor, and profit, its price for the camber addition

---

**1.** Plaintiffs are the statutory trustees of Dimarco Corporation, a Missouri corporation whose charter was forfeited effective February 8, 1985, for failure to file a Missouri franchise tax report pursuant to section 351.525(1), Missouri Revised Statutes (1984 Supp.).

**2.** camber *n.* 1. a slightly arched surface, as of a road, a ship's deck, or an airfoil. Webster's II 221 (New Riverside University Dictionary 1984).

In the construction of bridges, walkways, etc., camber serves to compensate for the natural tendency of gravity to cause such structures to sag in the middle. Thus a walkway without camber would look like this: ▬▬▬ and after being in place would look like this: ◡ . While with camber it looks like this: ◠ and when in place like this: ▬▬▬ . These examples of course, are exaggerated versions of this effect.

would be $5,693.00 and that an extension of time to September 30, 1983, to complete the contract would also be necessary. On April 12, 1983, defendant informed Dimarco that it would issue a proposal request to Dimarco for the cost of adding camber, which it did on July 6, 1983. On July 8, 1983, Dimarco sent its proposal to add the camber for $5,693.00. Defendant accepted Dimarco's proposal on August 31, 1983, but refused to give Dimarco a new completion date. Pursuant to a subsequent letter from GSA, dated November 11, 1983, the completion date was extended 59 days.

The contract also provided for steel "L" angle irons in the top chord[3] of the trusses of the walkways. The dimensions of the "L" angle irons were prescribed as being seven inches by four inches by five eighths of an inch. These angle irons were special order items as they were not readily available in regular production. Dimarco proposed that "L" angle irons of a thickness of half an inch be substituted for the angle irons of five eighths of an inch thickness, but defendant refused. Subsequently angle irons with a thickness of three quarters of an inch were substituted, however, defendant refused to modify the contract by adding $2,363.00 to the total price of the contract to cover the thicker angle irons.

Dimarco claimed it was damaged in the total amount of $80,283.55. By the CO's final decision of December 20, 1984, Dimarco's claim was denied in its entirety. The CO's decision was received by Dimarco on December 28, 1984. Dimarco filed its claim in this court on December 26, 1985. Plaintiffs seek a judgment against defendant in the amount of $80,283.55, with interest thereon per 41 U.S.C. § 611 from July 26, 1984 until paid, together with their costs and reasonable attorney's fees.

Due to the serious illness of one of the key individuals involved in this litigation, more delay has occurred in resolving this suit than is normally desirable.

---

**3.** chord *n.* 1. A line segment joining two points on a curve. Webster's II 259 (New Riverside

## DISCUSSION

### I. Defective Specifications and Accord and Satisfaction

■ It is well-settled law that government contracts contain a warranty that if the specifications are followed satisfactory performance is possible. However, if defective specifications result in increased costs by reason of the defect, the government is liable. *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). The damages recoverable extend to any costs incurred due to delay incurred by reason of the mistake in the specifications. *Laburnum Constr. Corp. v. United States*, 163 Ct.Cl. 339, 350, 325 F.2d 451 (1963). "[A]ll delay produced by defective specifications is *per se* unreasonable and compensable." *Beauchamp Constr. Co. v. United States*, 14 Cl.Ct. 430 (1988), *citing Chaney and James Constr. Co. v. United States*, 190 Ct.Cl. 699, 707, 421 F.2d 728 (1970). The lack of camber in the specifications is clearly a design defect as evidenced by testimony at trial.

Plaintiffs seek $77,920.55 (plus interest) as a result of the cost of delay for incorporating the camber. It is not disputed that delay damages may be recoverable in certain cases, such as in *Beauchamp Constr. Co.*, however, defendant contends that such an entitlement is barred by an accord and satisfaction when a comprehensive contract modification is executed without reserving the right to bring additional claims. *De Barros v. United States*, 5 Cl.Ct. 391 (1984); *B.D. Click Co. v. United States*, 222 Ct.Cl. 290, 295, 614 F.2d 748 (1980); *Merritt–Chapman & Scott Corp. v. United States*, 198 Ct.Cl. 223, 458 F.2d 42 (1972); *Brock and Blevins Co. v. United States*, 170 Ct.Cl. 52, 59, 343 F.2d 951 (1965).

■ An accord and satisfaction operates to extinguish, discharge, or terminate an existing right. To prove that there was a valid accord and satisfaction, the defendant must prove: (1) proper subject matter; (2)

University Dictionary 1984).

competent minds; (3) a meeting of the minds; (4) consideration; (5) the acceptance of payment or performance in satisfaction of a claim or demand which is a bona fide dispute. *See Brock & Blevins Co.*, 170 Ct.Cl. at 59, 343 F.2d 951. This entails "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim." *Id.* If the defendant fails to establish any of the above elements, the defense fails.

■ Defendant argues that the contract modification, accepted on August 31, 1983, constitutes an accord and satisfaction. The modification awarded plaintiffs $5,693.00 to provide two inch camber for the overhead walkways. The modification reads "[t]he undersigned contractor agrees to perform any or all of the above changes for the amount indicated. No work on any of the above changes shall be started until this proposal is accepted by the contracting officer." Robert A. Flack, the contracting officer on the project, accepted the proposal and hand wrote on the proposal, "price accepted—Requested time extension is rejected due to insufficient justification." There was no language to the effect that this was in full satisfaction of all claims arising out of the need to include more camber, nor was there any language on the part of plaintiffs reserving the right to seek further compensation. There was no reference to delay costs anywhere in the contract modification.

Although the issue of the dollar amount of the camber was resolved by August 31, 1983, in the contract modification, the issue of time extensions was not resolved until November 3, 1983 through later correspondence. Therefore, the contract modification did not settle all issues concerning the inclusion of camber. Negotiations for time extensions continued after the signing of the contract modification. This continued negotiation evidences the fact that a meeting of the minds did not exist so as to treat the contract modification as a release of further claims pertaining to the camber. "[P]ast administrative boards have held that the Government's consideration of the merits of a claim, following the execution of a release, indicates that the parties did *not* intend the release to extinguish the claim, and hence did not bar the contractor's earlier claim." *A & K Plumbing & Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 723 (1983) (emphasis in original). The final determination denying Dimarco's delay claim was made by a contracting officer more than a year after the modification was signed on December 20, 1984. The contracting officer's denial of the claim did not mention the accord and satisfaction as a reason for denying the claim. The court finds that there has not been an accord and satisfaction as there was no evidence of a meeting of the minds and some evidence that there was no meeting of the minds. Because the court finds that no accord and satisfaction is present, the court need not address whether the plaintiffs specifically reserved the right to later seek delay claims.

## II. Superior Knowledge

■ The parties do not dispute that the contract which is the subject of this litigation required the use of ⅝ inch angle irons. However, what is at issue is whether the government should have notified Dimarco that the specified size angle irons were no longer standard production items at the time it prepared its bid. Plaintiffs allege that the plans and specifications were defective because they were "purloined" from earlier plans and specifications used years ago by the government. The government, plaintiffs argue, had "superior knowledge" of the age of the plans and specifications which was not divulged prior to the submission of Dimarco's bid. Plaintiffs claim that had they known about the age of the plans they would have recognized that certain materials required under the contract would not be readily available.

" 'Superior knowledge' is defined as knowledge that is vital to performing a government contract, but which is unknown and not reasonably available to bidders, who are thereby misled." *Aleutain Constructors v. United States*, 24 Cl.Ct. 372, 383 (1991), *citing J.F. Shea Co. v. United States*, 4 Cl.Ct. 46 (1983). The key

factor in this case is that information relating to the availability of the specified angle irons was easily obtainable. Even Dimarco recognized that the AISC Handbook verified that the ⅝ inch angles were not commonly available. The government did not possess any "superior knowledge." In fact, defendant is not obligated to inform plaintiffs that the specified iron angles were not readily available. "[T]he obligation to locate a supplier remains where that sort of obligation has traditionally rested—upon the contractor." *Franklin E. Penny Co. v. United States*, 207 Ct.Cl. 842, 854 (1975). *See also WRB Corp. v. United States*, 183 Ct.Cl. 409, 512 (1968) (finding that government would not be liable for added costs "absent a special agreement or wrongful conduct.").

■ The evidence in this case does not support a finding that the plans and specifications were outdated. Plaintiffs' expert witness, Mr. Greg Elam, was unable to corroborate that the plans were in fact derived from earlier plans. Without an element of wrongdoing on the part of defendant, plaintiffs cannot hold defendant to a higher standard of disclosure. The rule that a contractor must ascertain the availability of materials on its own is common practice and must be followed unless the particular circumstances present otherwise. In this case, unlike *Aerodex, Inc. v. United States*, 189 Ct.Cl. 344, 417 F.2d 1361 (1969), there were no unusual circumstances. In *Aerodex* the contractor learned after the contract was signed that the specific brand of resistors called for by the contract were only available at an amount almost five times that of the plaintiffs' contract price. The court held that

> where the Government issues an invitation for a procurement item containing a component which is given a purchase description consisting of a brand name product manufactured by a designated company or its 'approved substantial equal,' and the designated manufacturer developed the procurement item in connection with a research and development contract immediately preceding the bid procurement in issue, it is the obligation of the Government to ascertain and as-

sure to bidders the commercial availability of the component....

189 Ct.Cl. at 354, 417 F.2d 1361. The underlying facts and legal teaching of *Aerodex* are materially different from the instant case. Defendant did not list a particular brand of angle iron nor did it have any direct contact with a manufacturer of such angle iron which would have given it special knowledge of the angle iron's availability. In *Aerodex* plaintiff had a much greater expectation of availability than is the case here. Therefore, this case does not help plaintiffs.

**III. Damages**

■ Plaintiffs seek damages in the amount of $80,283.55 for delay claims for the inclusion of camber and the angle irons. Mr. Westerhold testified at trial that plaintiffs were only seeking delay claims. However, plaintiffs have no support for their delay damages claim. Plaintiffs admitted into evidence a summary of expenditures, however, those figures merely represented expenses incurred for materials and labor; direct cost items. Plaintiffs' Exhibit 3 lists $110,926.86 for labor and materials, $11,092.69 for overhead and profit, $4,900.00 for Pacific Employers Insurance, less $5,693.00 for the camber and less $40,943.00 for Hammert's Purchase order totalling $80,283.55. No proof was made of how these expenses related to the delay. Therefore, without being able to allocate expenses to delay claims, this court cannot award a judgment in favor of plaintiffs. What plaintiffs really are seeking appears to be a total cost claim. For such a claim they have made no adequate showing. *WRB Corp. v. United States*, 183 Ct.Cl. 409, 426 (1968).

### CONCLUSION

Plaintiffs have shown that the government was responsible for a significant delay between December 29, 1982, and April 15, 1983. They have presented some ambiguous evidence that they have paid $6,100 to the government in liquidated damages for late completion as a result of this delay. If this is the case the court will

allow this amount to be recovered with interest pursuant to the Contract Disputes Act, 41 U.S.C. § 611. Since the trial record is far from clear on this issue, the court orders counsel to confer on this matter and submit a joint status report to the court within sixty days. If the parties cannot agree they shall submit separate status reports. As per discussions in the trial record, the court hopes that the issue may be resolved by stipulation of the parties prior to that time. Each side shall bear its own costs and attorney's fees in this case.

**IT IS SO ORDERED.**