**STARFLIGHT BOATS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–727 C.

United States Court of Federal Claims.

Feb. 8, 2001.

---

**594**

Richard W. Schwartzman, McManus, Schor, Asmar & Darden, LLP, Washington, D.C., for plaintiff.

Bryant S. Banes, United States Department of Justice, Washington, D.C., for the defendant, with whom were Assistant Attorney General David W. Ogden, Director David M. Cohen, Assistant Director Harold D. Lester, Jr. and of counsel Brian O'Boyle and John Lauro, Department of the Air Force.

### ORDER

MOODY R. TIDWELL, III, Senior Judge.

This government contract case is before the court, on defendant's motion in limine and to dismiss, or in the alternative, for summary judgment. Plaintiff filed a complaint alleging damages resulting from delays incurred by plaintiff arising under the subject contract and caused by the government. Plaintiff alleged that contract performance was delayed because he was cooperating with the government's criminal investigation of the Contracting Officer's Representative. For the reasons set forth below, defendant's motions in limine and for summary judgment are hereby *ALLOWED*. The defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), is hereby deemed *MOOT*.

### BACKGROUND

On September 21, 1992, Contract No. F08637–92–C–080 (hereinafter the "con-tract") was awarded to Starflight Boats (hereinafter "Starflight" or "Plaintiff") by the Department of the Air Force, Air Education and Training Command, 325th Contracting Squadron at Tyndall Air Force Base, Florida (hereinafter "Air Force" or "government"). The contract price for the manufacture and purchase of 47 airfield runway edge marker systems was a total firm fixed price of $864,348.00. During the contract performance, the parties executed eight bilateral modifications, which raised the contract price to $949,794.00, and extended the schedule to cover the extension period of the contract.

The people overseeing the contract on behalf of the government included: Sue Harris, the contract specialist and administrator; Larry Edwards, the procurement contracting officer (hereinafter "CO"); and Ronnie Kenney, the contracting officer's technical representatives (hereinafter "COR"). Donald Brown, owner and President of Starflight, supervised the contract on behalf of plaintiff.

Shortly after plaintiff began performing the contract, Kenney, the COR, attempted to induce Mr. Brown to conspire with him to defraud the government. Under Kenney's plan, Mr. Brown would substitute inferior products for those that were specified in the contract, without reducing the price that Mr. Brown charged the government. Kenney and Mr. Brown would then divide the money that the government overpaid. Although Ronnie Kenney persisted in soliciting Mr. Brown's participation, Mr. Brown did not acquiesce. Mr. Brown did, however, inform Sue Harris, and she referred Mr. Brown to Doug Brian, Deputy of Contracting for the Air Force.

At a meeting in early 1993, Mr. Brown informed Brian of Kenney's conduct. Mr. Brown alleges that he and Brian reached a secret, oral agreement whereby Mr. Brown would help the government investigate Kenney. Mr. Brown further alleges that Brian instructed him to comply with the unlawful demands of Mr. Kenney, and Doug Brian, in return, promised he would honor Mr. Brown's claims for the costs associated therewith upon the conclusion of the investigation and conviction of Kenney.

The Air Force Office of Special Investigation began investigating Kenney on May 17, 1993 and closed the investigation on November 18, 1996. As a result of this investigation and subsequent criminal trial, Kenney was convicted on August 29, 1997 for soliciting a gratuity as a public official.

On October 30, 1995, Mr. Brown filed a claim for damages with the Department of the Air Force for $224,390.00. Mr. Brown's claim alleged that the contract's performance was delayed because he was cooperating with the criminal investigation of Kenney. The Department of the Air Force rejected Mr. Brown's claim on August 28, 1998 via letter that Mr. Brown received in early September 1998. Plaintiff filed the instant action on August 24, 1999.

Plaintiff brings this action asserting that it is entitled to the additional $224,390.00 for damages resulting from delays encountered by the contractor due to interference by the COR who was investigated, indicted, and convicted from soliciting bribes from Starflight.

## DISCUSSION

The instant matter before the court arises out of defendant's motion in limine and to dismiss or, in the alternative, for summary judgment. In ruling on a motion to dismiss under the Rules of the Court of Federal Claims ("RCFC") 12(b)(4), the court must accept as true the complaint's allegations and construe the facts in the light most favorable to the moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). RCFC 12(b)(4) authorizes dismissal of a complaint if, assuming the truth of all allegations, it fails to state a claim upon which relief may be granted as a matter of law. Dismissal of a complaint is also appropriate whenever "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden then shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party cannot discharge its burden by cryptic, conclusory, or generalized responses but, instead, must produce some evidence showing a dispute of material fact. *See Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975); *see also Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978). A material fact is one that would change the outcome of the litigation. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Facts which are not outcome determinative are not material, and disputes over such facts will not preclude the court from granting summary judgment. *See id.*

Contract interpretation is a matter of law resolvable by summary judgment. *See Joe LeMoine Constr. v. United States*, 36 Fed.Cl. 4, 8 (1996) (*citing Muniz v. United States*, 972 F.2d 1304, 1309 (Fed.Cir.1992)). When construing a contract, the court's primary goal is to determine the intent of the contracting parties. *See Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1185 (Fed.Cir.1988).

## I. Motion in Limine

■ The government's rule 56 motion for summary judgment turns on whether the alleged secret oral agreement should be precluded from admission based upon the parol evidence rule. The parol evidence rule is a rule of substantive law, not a rule of evidence. *See David Nassif Associates v. United States*, 214 Ct.Cl. 407, 419, 557 F.2d 249 (1977). This rule prohibits the admission of prior or contemporaneous evidence seeking to add to or vary the terms of a written agreement, when the parties have adopted the agreement as an expression of their final understanding. *See id.* at 419–20. The parol

evidence rule also prevents the introduction of prior or contemporaneous evidence inconsistent with a written agreement. *See Cooper Realty Co. v. United States,* 36 Fed.Cl. 284, 288 (1996); *see also Montana Power Co. v. United States,* 8 Cl.Ct. 730, 735 (1985); *De Barros v. United States,* 5 Cl.Ct. 391, 395 (1984); *Sylvania Electric Products, Inc. v. United States,* 198 Ct.Cl. 106, 126, 458 F.2d 994 (1972).

■ The parol evidence rule precludes the admission of the alleged secret agreement in this action, which was made prior to, or contemporaneous with, at least six of the written contract modifications and are inconsistent therewith. The written modifications are clear, specific, unambiguous, and carve out no exceptions, protests or reservations. Specifically, bilateral modifications P00002, P00003, P00005, P00006, P00007, and P00008 each contain a paragraph waiving all claims for equitable adjustment based on anything arising prior to the modification. Furthermore, the eight contract modifications cover the entire contract extension period. The modifications "merged all previous negotiations, and [are] presumed, in law, to express the final understanding of the parties." *See Brawley v. United States,* 96 U.S. 168, 173, 13 Ct.Cl. 521, 24 L.Ed. 622 (1877). Since the alleged secret oral agreement supposedly varied the terms of the subsequent agreements, the parol evidence rule precludes plaintiff from introducing evidence concerning the alleged oral understanding.

Plaintiff has not raised any of the exceptions which would avoid the application of the parol evidence rule. Plaintiff attempts to avoid the application of the parol evidence rule by asserting that the contract modifications were not integrated, arguing only partial integration existed. We agree with the Armed Service Board of Contract Appeals that the Board is "not precluded from considering evidence of prior or contemporaneous agreements or negotiations or other relevant evidence concerning dealings and understandings between parties to determine whether the bilateral modifications on which the Government relies in its motion were or were not integrated agreements." *Appeal of Triple "A" South,* 90–1 BCA 22,567, ASBCA No. 35,824, 1989 WL 161107 (*citing* Restatement (Second) of Contracts § 214(a)). *Triple "A" South* explains that this is a question of material fact. *See id.*

Plaintiff seeks to prove that the alleged, secret oral agreement with Brian was a consistent additional term and, therefore, the agreement was not integrated. "An agreement is not completely integrated if the writing omits a consistent additional agreed term which is (a) agreed to for separate consideration, or (b) such a term as in the circumstances might naturally be omitted from the writing." Restatement (Second) of Contract § 216(2). Plaintiff contends that the agreement with Brian was an additional term and the consideration was in fact his assistance in the investigation and prosecution of the COR in return for repayment of the costs incurred in furtherance of his assistance. Plaintiff also argues that due to the requirement that the criminal investigation needed to remain a secret, it would be natural to omit the additional terms from the original contract. Plaintiff presents the president of Starflight Boats, Mr. Brown's affidavit, as evidence to prove lack of integration. This is inconsistent with Mr. Brown's deposition testimony which states that he understood the clause in the modifications precluded any further claim. Mr. Brown also testified during the trial of Kenney, the COR, that he:

> "knew going into this that, when [he] signed that amendment saying that this instituted or actually presented full and equitable treatment and satisfaction, that a claim under normal conditions would not be satisfied, it would not be accepted, because [he] had signed a document saying, I do not hold the government responsible for this claim. And the purpose—what will happen is, the government will eventually look at those documents, and they will probably come to the conclusion that I gave up my right to any claim, because I signed that amendment."

Trial Transcript of Mr. Brown's Testimony, Appendix to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at Exhibit 20 (Filed: Aug. 11, 2000).

"Absent evidence establishing that the writing, in fact, did not constitute a final expression, the general rule for determining integration is that where the terms on the whole are complete and specific, the written contract 'is presumed, in law, to express the final understanding of the parties.'" *California Sand & Gravel, Inc., v. United States,* 22 Cl.Ct. 19, 26 (1990) *quoting Brawley,* 96 U.S. at 173. As discussed earlier, the written modifications are clear and specific. Plaintiff does not present any other evidence apart from Mr. Brown's affidavit to prove lack of integration.

Had plaintiff wanted to ensure that the oral agreement would be enforced against defendant, it could have done so in several different ways. Plaintiff could have endeavored to negotiate the oral terms into another separate contract with an agent authorized to bind the government. In keeping with plaintiff's desire to secure the integrity of the criminal investigation, the contract could have been executed and filed separately without the COR's knowledge. Plaintiff could have executed a separate contract which would declare the existing contract null and void and then executed a new contract under the terms agreed to by both parties which would protect the government from a windfall of double payment under both contracts, as well as protect plaintiff in obtaining payment. Another option plaintiff could have undertaken was to execute a separate amendment or written modification to the existing contract with a different authorized agent. Plaintiff also could have written a separate contract for aiding specifically in the criminal investigation which would provide for the difference between the existing contract and plaintiff's actual claim. Plaintiff, however, having failed to reduce the alleged oral agreement to writing, is barred from introducing evidence concerning it due to the parol evidence rule.

"'The purpose and essence of the [parol evidence] rule is to avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract.'" *Nicholson v. United States,* 29 Fed.Cl. 180, 196 (1993) (*quoting Garza v. Marine Transp.* *Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988)) (*citing Pacificorp Capital, Inc. v. United States,* 25 Cl.Ct. 707, 716 (1992)). The court can most equitably insure against fraud by precluding the admission of prior or contemporaneous evidence seeking to add or vary a written contract's terms, when the parties have adopted the agreement as a final expression of their understanding. In the case at bar, the written modifications are unambiguous, and having "merged all previous negotiations" they are "presumed, in law, to express the final understanding of the parties." *Brawley,* 96 U.S. at 173. Under these circumstances, the parol evidence rule bars plaintiff from introducing evidence concerning the alleged oral agreement.

## II. Implied oral agreement

Plaintiff argues that an implied-in-fact contract existed between Mr. Brown and the government. Plaintiff contends that, under the agreement, Mr. Brown promised to assist the government in its criminal investigation of Kenney, and in exchange for Mr. Brown's help, the government promised to reimburse Mr. Brown for his costs associated with assisting the government. It is under this alleged implied-in-fact contract that Mr. Brown now seeks damages.

An implied-in-fact contract is one "'founded upon a meeting of minds, which, although, not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Porter v. United States,* 204 Ct. Cl. 355, 365–66, 496 F.2d 583 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975) (*quoting Baltimore & O.R. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 67 L.Ed. 816 (1923)); *see also Atlas Corp. v. United States,* 895 F.2d 745, 754 (Fed.Cir.1990). The requirements for an implied-in-fact contract include findings of: (1) mutuality of intent to contract, including offer and acceptance; (2) consideration; and, (3) lack of ambiguity in offer and acceptance. *See City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). An additional requirement is added when the United States is a party; the government representative

" 'whose conduct is relied upon must have actual authority to bind the government in contract.' " *See City of El Centro,* 922 F.2d at 820 (*quoting Juda v. United States,* 6 Cl.Ct. 441, 452 (1984)) (*citing Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)); *see also Total Med. Mgmt., Inc. v. United States,* 104 F.3d 1314, 1319 (1997). This requirement arises from the concept "that the Government, unlike private parties, cannot be bound by the apparent authority of its agents." *Roy v. United States,* 38 Fed.Cl. 184, 187 (1997). "A finding of lack of authority would render the purported contract at issue unenforceable." *Id.* Lastly, an implied-in-fact contract can only exist if the subject matter of the agreement is not already covered by an express contract. *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1326 (Fed.Cir. 1997); *see Atlas v. United States,* 895 F.2d 745, 754 (Fed.Cir.1990).

Plaintiff's claim that it entered into an implied-in-fact contract with the government fails for two reasons. First, the government representative, Mr. Brian, did not have actual authority to bind the government in contract. Second, an implied-in-fact contract cannot be found to exist as an express contract which already covered the same subject matter.

### A. *Brian did not have authority to bind the government*

Plaintiff argues that it meets the requirements of an implied-in-fact contract with the government. Plaintiff contends that it was asked to assist in the criminal investigation of the COR and in return it would be compensated for any costs related to plaintiff's assistance. Plaintiff maintains that Mr. Doug Brian, the Deputy Chief of Procurement, extended to Mr. Brown an express oral contract offer. Plaintiff asserts that Mr. Brown accepted the government's offer expressly as well as through his conduct. Plaintiff argues that its oral acceptance of the government's offer forms the basis of an implied-in-fact contract founded upon a meeting of the minds which, although is not embodied in an express contract, is inferred from the conduct of the parties demonstrat-

ing their tacit understanding. *See Algonac Manufacturing Co. v. United States,* 192 Ct. Cl. 649, 428 F.2d 1241 (1970). Plaintiff further contends that the consideration was given in the form of his assistance in the investigation and prosecution of Mr. Kenney in return for repayment of costs incurred by Mr. Brown.

Plaintiff argues that the government may also ratify a parol contract through accepting the benefits received from a contractor's actions. "Starting with the case of *Clark v. United States,* 95 U.S. (Otto) 539, 24 L.Ed. 518 (1877) and consistently followed since, this court and the Supreme Court have adhered to the rule that a parol contract fully executed by the contractor upon his part, wherein the United States receives all the benefits for the undertaking, imposes a liability upon the latter as upon an implied contract." *Pacific Maritime Ass'n v. United States,* 123 Ct.Cl. 667, 108 F.Supp. 603 (1952).

 Plaintiff, however, must also show that Mr. Brian, the government representative who entered into the alleged contract with plaintiff, had actual authority to authorize Mr. Brown's assistance. Actual authority can either be express or implied-in-fact. *See H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989). Government employees hold express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants them such authority in unambiguous terms. *See Roy,* 38 Fed.Cl. at 188. Starflight has not presented any evidence demonstrating that Brian had actual authority to enter into a contract. Plaintiff solely offers its bare assertion that Brian was within the scope of his authority and does not offer any statutes or regulations as the source of Brian's authority. Plaintiff fails to present any provisions which suggest that Brian, or anyone else with whom Mr. Brown purported to contract, had authority to orally bind the government and hence alter the terms of the original contract or its written modifications.

 Plaintiff contends that by the very nature of Brian's position as Deputy Chief of Procurement, he had actual authority to authorize Mr. Brown's assistance. Plaintiff ar-

gues that Brian, as an officer authorized to contract for the United States, has the implied authority to modify provisions of a contract specifically where it is clear that it is in the best interest of the government to do so. *See Casey v. United States,* 342 U.S. 892, 72 S.Ct. 200, 96 L.Ed. 668 (1951). Actual authority may be implied when such authority is an "integral part of the duties assigned to a [g]overnment employee." *See H. Landau & Co.,* 886 F.2d at 324 (*quoting* J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)). Although Brian was involved in the administration of this contract, a person with no actual authority can not acquire actual authority "through the court-made rule of implied actual authority." *See California Sand & Gravel, Inc.,* 22 Cl.Ct. at 27.

The contract contained Federal Acquisition (hereinafter "FAR") § 52.243–1, Changes—Fixed Price, which states in part that "[t]he contracting officer may at any time, by *written* order, ... make changes within the general scope of this contract..." 48 C.F.R. § 52.243–1 (emphasis added). Plaintiff has not offered any evidence that Mr. Brian acquired approval from any official with adequate authority to contravene the requirement that all contract changes be in writing.

■ The Federal Circuit, in *Harbert/Lummus Agrifuels Projects v. United States,* addressed the issues of implied-in-fact contracts and the requisite authority of government employees to bind the government. 142 F.3d 1429 (Fed.Cir.1998). The court explained that:

> It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority. [Citations omitted.] Contractors dealing with the United States must inform themselves of a representative's authority and the limits of that authority. [Citations omitted.] Moreover, 'anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been

unaware of the limitations on their authority.' [Citations omitted.]

*Id.* at 1432.

In that case, the court held that plaintiff, Harbert/Lummus, had the burden to prove that the contracting officer had authority to enter into the oral, unilateral contract. *See id.* The court found the fact that Harbert/Lummus may have believed that the contracting officer had authority to be irrelevant. *See id.* Plaintiff must prove that the contracting officer had actual authority. *See id.*

■ In the case at bar, even if plaintiff believed that Brian had authority to bind the government in contract, plaintiff bore the burden of confirming through the government the exact reach of Brian's authority. Therefore, plaintiff cannot meet the elements of an implied-in-fact contract with the government, specifically due to Brian's lack of actual authority to bind the government.

B. *The subject matter of the express contract related to the alleged implied-in-fact contract*

■ Even if plaintiff was able to prove each of the elements of an implied-in-fact contract, and prove that Brian had authority to bind the government in contract, an implied-in-fact contract could not have arisen due to the existence of an express contract on the same subject matter. *See Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 558 (1999); *Algonac Manufacturing Co.,* 428 F.2d at 1255 (*citing* 17 C.J.S. Contracts § 5 (1963)). As a general rule, an implied-in-fact contract cannot exist if an express contract already covers the same subject matter, unless the implied contract is entirely unrelated to the express contract. *Atlas Corp.,* 895 F.2d at 754.

Plaintiff does not identify anything that the government promised under an implied-in-fact contract that was beyond the scope of the express contract between plaintiff and the government. Plaintiff does not allege any facts suggesting that its relationship with the government concerning the Kenney investigation was in any way unrelated to the express contract. In fact, plaintiff argues in

its complaint and subsequent filings that its only concerns, both before and during the investigation, were its own solvency and its ability to complete its express contract obligations in the agreed upon time. *See* Affidavit of Donald E. Brown, Appendix to Plaintiff's Opposition to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at ¶ 13 (Filed: Oct. 31, 2000).

In his affidavit, Mr. Brown recalls a meeting between himself and Brian, who was the government employee that solicited Mr. Brown's help investigating Kenney. In his sworn affidavit Mr. Brown states:

> "[d]uring the conference I expressed my need for time extensions and contract payments. The contract did not permit sufficient progress payments. I told Mr. Brian that I would run out of funds before the contract would be performed under the present circumstances. That this would be especially true if I cooperated in the investigation relating to Mr. Kenney's illegal activities."

*Id.*

It is clear that Mr. Brown knew even before meeting with Brian, in connection with the Kenney investigation, that his company needed funds and was having difficulty meeting the contract's schedule. Plaintiff alleges that Brian, in response to Mr. Brown's concerns, assured him that if he cooperated with the government, Mr. Brown would not run out of money or lose the contract. *See id.* Mr. Brian then contacted Contract Specialist Sue Harris, and she amended the express contract by issuing bilateral Amendment/Modification number P00002 (hereinafter "P00002"). *See id.* Pursuant to P00002, the government: (i) changed specifications in the contract that increased the contract's total value by $85,446.00, (ii) agreed to allow plaintiff

twenty-five extra days to complete a testing procedure that was required by the express contract [1], (iii) changed the FOB from "Origin to Destination," and (iv) permitted plaintiff to invoice twice a month. *See* Contract Modification No. P0002, dated March 23, 1993, Appendix to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at Exhibit 4 (Filed: Aug. 11, 2000). Mr. Brown signed P00002 as the authorized agent for plaintiff, and Larry Edwards signed as the authorized agent for defendant. *See id.* Shortly thereafter, Harris helped Mr. Brown secure progress payments, easing plaintiff's cash problems. *See* Deposition of Donald Brown, dated May 19, 2000, Appendix to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at 9 (Filed: Aug. 11, 2000). The four items to which P00002 relates are all covered under the subject matter of the express contract, therefore, they cannot also be the subject matter of an implied-in-fact contract. *See Atlas*, 895 F.2d at 754.

Similarly, in *Atlas*, there were three plaintiffs who were corporations, or successor corporations, that entered into contracts with the government whereby the contractors would produce uranium and thorium for the government. *Id.* at 748. The original contracts dated back to the 1940s, and they were amended several times between 1950 and 1970. *See id.* The express contracts set price provisions designed to allow each contractor to recover its costs of production, and also make a reasonable profit. *See id.* During the time period of the contract, the parties began to learn about the health dangers associated with uranium and thorium, and in response to those dangers, the government established safety measures for handling the products' waste, known as "tailings". *See id.* After several years of conforming to the increased safety standards, at increased costs

---

1. This is the second time that this test's deadline date was extended. The original date was January 19, 1993; plaintiff was unable to meet the original completion date, and therefore the parties agreed to P00001, extending the completion date to February 12, 1993. P00002 extended it once again until March 19, 1993. Plaintiff requested both extensions. *See* Contract Modification No. P00001, dated January 8, 1993. Appendix to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at Exhibit 2 (Filed: Aug. 11, 2000); *See* Contract Modification No. P00002, dated March 23, 1993, Appendix to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at Exhibit 4 (Filed: Aug. 11, 2000).

to the contractors, the contractors sued the government seeking to recover the costs of these added safety measures. *See id.* Both sides agreed that these added safety measures were not contemplated by the parties when the original contract was negotiated, but the contractors argued that the government agreed to compensate the contractors for all production costs, including the costs related to the tailings, under an implied-in-fact contract theory. *See id.* at 754.

The Court of Appeals for the Federal Circuit held that, although the contractors' costs factored into how much they would be paid, the express contract established the prices that the contractors could charge. *Atlas Corp. v. United States,* 895 F.2d 745, 754 (Fed.Cir.1990). Therefore, any agreement that altered those payment terms was "not entirely unrelated" to the express contract; hence, as a matter of law, no implied-in-fact contract existed. *Id.* at 755.

In the case at bar, when Mr. Brown met with Brian to discuss his assistance in the government's investigation of Kenney, they altered the terms of the express contract. Moreover, the government and Mr. Brown agreed to six more time extensions during the contract's performance, all during the period that the government was investigating Kenney. Through these amendments, they agreed to change the contract's specifications, plaintiff's shipping liability, deadline extensions, invoicing requirements, and progress payment schedule. All of these terms are part of the subject matter covered by the express contract. Therefore, as in *Atlas,* they were not unrelated to the express contract.

When Mr. Brown "expressed [his] need for time extensions and contract payments," Brian provided him with what he asked for, in exchange for Mr. Brown's promise to help the government. *See* Affidavit of Donald E. Brown, Appendix to Plaintiff's Opposition to Defendant's Motion in Limine and to Dismiss, or in the Alternative, for Summary Judgment, at ¶13 (Filed: Oct. 31, 2000). The government and Mr. Brown mutually agreed that Mr. Brown would assist the government, and Mr. Brown secured, for plaintiff, better terms to the express contract.

The record before the court is sufficient to determine that any oral implied-in-fact contract between plaintiff and the government is inextricably connected to the subject matter of the express contract between the parties. Therefore, as a matter of law, the court finds that there is no implied-in-fact contract.

## III. Accord & Satisfaction

Plaintiff's claim is barred by accord and satisfaction. Defendant contends that the eight written contract modifications constitute a waiver, release, and an accord and satisfaction of plaintiff's claim.

"Accord and satisfaction denotes 'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an action for the enforcement of a previous claim, whether that claim was well founded or not.'" *Chesapeake & Potomac Tel. Co. v. United States,* 228 Ct.Cl. 101, 108, 654 F.2d 711 (1981) (*quoting* 6 Corbin on Contracts § 1276 (1962)). "An 'accord' is 'an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of an existing or matured claim, something other than which is claimed to be due.'" *Id.* (*quoting* 1 Am.Jur.2d *Accord and Satisfaction* § 1 (1962)). Satisfaction is defined as the execution of the performance. *See id.*

A party claiming an accord and satisfaction must prove: (1) proper subject matter; (2) competent minds; (3) a meeting of the minds; (4) consideration; and (5) the acceptance of payment or performance in satisfaction of a claim or demand which is a bona fide dispute. *See Westerhold v. United States,* 28 Fed.Cl. 172, 174–75 (1993) (*citing Brock & Blevins Co. v. United States,* 170 Ct.Cl. 52, 59, 343 F.2d 951 (1965)). The defense fails if the defendant is unable to establish any of the above elements. *See Westerhold,* 28 Fed.Cl. at 175.

The court finds that these elements were present in the eight bilateral written modifications to the contract. The subject matter of the modifications were proper; the parties were competent minds; and there was consideration. Furthermore, there appeared to

be a meeting of the minds. The intent of the parties governs in determining if there was a meeting of the minds. *See Safeco Credit v. United States,* 44 Fed.Cl. 406, 419 (1999). "[T]he contract modification represents the best source of evidence regarding intent." *Id.* (*quoting McLain Plumbing & Elec. Serv., Inc. v. United States,* 30 Fed.Cl. 70, 81 (1993)).

Additionally, six of the eight modifications contained language purporting to release the government from liability for further equitable adjustments. Contract modifications Nos. P00002, P00003, P00007 and P00008 state "[t]he provisions of this supplemental agreement constitute a complete and equitable adjustment. Any and all further claims for adjustment in the contract price and delivery schedule resulting from these changes are hereby waived and released." Contract modifications Nos. P00005 and P00006 state "[t]he parties specifically acknowledge and agree that this Supplemental Agreement constitutes full satisfaction of the parties' right to equitable adjustment, under any clause of this contract, relating to modifications effected herein."

 "The court cannot import ambiguity into unambiguous language." *Safeco Credit v. United States,* 44 Fed.Cl. at 419. Parol evidence cannot be used by a party to create contractual ambiguity. *See King Fisher Marine Serv., Inc. v. United States,* 16 Cl.Ct. 231, 234 (1989). The court is prohibited from considering extrinsic evidence to vary the meaning of clear, unambiguous language. *See id.*

 Furthermore, "[i]t is also well established that ordinarily an executed bilateral contract modification that contains no reservations constitutes an accord and satisfaction of a claim." *C & H Commercial Contractors, Inc. v. United States,* 35 Fed. Cl. 246, 252 (1996). Any reservation of a right or a claim for damages stemming from a bilateral contract modification generally must be precisely set forth in the contract modification. *See id.* In the case at bar, none of the bilateral modifications contained any specific reservations of right to seek additional damages arising from the contract

extensions and contemporaneous circumstances.

Plaintiff's allegation of its intent not to waive a claim for monetary costs incurred when it signed the modifications is not sufficient to raise a genuine issue of material fact. *See Safeco Credit v. United States,* 44 Fed. Cl. at 420 (explaining that plaintiff "must show something more than 'subjective intent' in order to preclude summary judgment for defendant on its defense of accord and satisfaction"). Therefore, under the doctrine of accord and satisfaction, plaintiff's claim is discharged.

### CONCLUSION

For the reasons set forth above, defendant's motions in limine and for summary judgment are hereby *ALLOWED*. The defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), is deemed hereby *MOOT*. The Clerk of the court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**