**C.A. RASMUSSEN, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–752C.

United States Court of Federal Claims.

April 16, 2002.

---

Paul M. Mahoney, Claremont, CA, for plaintiff.

Joseph Trautwein, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Donald E. Kinner, Assistant Director; David M. Cohen, Director; and Robert D. McCallum, Jr., Assistant Attorney General. Mark M. Weintraub, Corps of Engineers, Los Angeles, CA.

## OPINION

DAMICH, Judge.

### I. Introduction

This action is before the Court on the United States (hereinafter "Defendant's") Motion for Partial Summary Judgment pursuant to Rule 56(b) of the Court of Federal Claims (RCFC). Defendant contends that C.A. Rasmussen, Inc. (hereinafter "Plaintiff") did not comply with the contractual requirements necessary to establish its entitlement to compensation for value engineering change proposals (VECPs) allegedly furnished to Defendant. For the reasons stated herein, the Defendant's Motion for Partial Summary Judgment is hereby GRANTED.

### II. Background

On June 11, 1997, the United States Army Corp of Engineers (hereinafter "Corps") awarded fixed-price Contract No. DACW09–97–C–0038 (hereinafter "contract") to Plaintiff for the construction of channel improvements at Reach 1 of the Santa Paula Creek in Ventura County, California. The contract was part of a larger effort by the Corps to provide the City of Santa Paula with flood protection along Santa Paula Creek. The work required by the contract included the demolition of existing concrete walls, excavation of a pilot channel and construction of a stone protection channel (hereinafter "rip-rap") and concrete structures such as retaining walls and side drain structures. Section 02600 of the contract, entitled "Stone Protection," contained two specific paragraphs of relevance concerning the source of the grouted stone used for the rip-rap:

### 2.1.3.1 Source Development

Before a proposed source or sources of stone will be considered for sampling and testing, the Contractor must demonstrate that the source has sufficient stone to fulfill the contract requirements. If sufficient amounts of stone conforming to these specifications are not available from a source or sources used in the work, the Contractor shall submit stone from another source for authorization.

### 2.3.2 Grouted Stone Protection

The grouted stone shall be produced by processing the material within the channel limits. Grouted stone shall be stone from the streambed which is, reasonably graded within the limits specified below . . . .

According to Section 00010, entitled "Schedule of Payment: Supplies or Services and Prices/Costs," Plaintiff was required to produce 9,100 cubic meters (cm) of stone for the rip-rap by excavating at least 32,800 cm of stone on-site.

The contract incorporated by reference FAR 52.248–3, the VECP clause that acts as a procurement technique to encourage contractors to reduce their costs in exchange for a share of the savings. The clause provides in pertinent part:

(b) Definitions.

'Value engineering change proposal (VECP)' means a proposal that—

(1) Requires a change to this, the instant contract, to implement; and

(2) Results in reducing the contract price or estimated cost without impairing essential functions or characteristics; *provided,* that it does not involve a change—

(i) In deliverable end item quantities only; or

(ii) To the contract type only.

(c) VECP preparation.

As a minimum, the Contractor shall include in each VECP the information described in paragraphs (c)(1) through (7) of this clause. If the proposed change is affected by contractually required configuration management or similar procedures, the instructions in those procedures relating to format, identification, and priority assignment shall govern VECP preparation. The VECP shall include the following:

(1) A description of the difference between the existing contract requirement and that proposed, the comparative advantages and disadvantages of each, a justification when an item's function or characteristics are being altered, and the effect of the change on the end item's performance.

(2) A list and analysis of the contract requirements that must be changed if the VECP is accepted, including any suggested specification revisions.

(3) A separate, detailed cost estimate for (i) the affected portions of the existing contract requirement and (ii) the VECP. The cost reduction associated with the VECP shall take into account the Contractor's allowable development and implementation costs, including any amount attributable to subcontracts under paragraph (h) of this clause.

(4) A description and estimate of costs the Government may incur in implementing the VECP, such as test and evaluation and operating and support costs.

(5) A prediction of any effects the proposed change would have on collateral costs to the agency.

(6) A statement of the time by which a contract modification accepting the VECP must be issued in order to achieve the maximum cost reduction, noting any effect on the contract completion time or delivery schedule.

(7) Identification of any previous submissions of the VECP, including the dates submitted, the agencies and contract numbers involved, and previous Government actions, if known.

(d) Submissions.

The Contractor shall submit VECP's to the Resident Engineer at the worksite, with a copy to the Contracting Officer.

The initial estimated value of the contract was $3,019,353 and its initial completion date was December 22, 1997. The project was actually completed on October 15, 1998. Plaintiff filed its complaint on December 12,

2000. At issue in Defendant's Motion for Partial Summary Judgment is Plaintiff's request for compensation in the amount of $1,632,184, for alleged value engineering services rendered to the Corps.[1] Specifically, Plaintiff alleges that its importation of stone compatible to that on-site from the San Gabriel River near Fish Canyon, adjacent to the City of Duarte, was a change to the contract by which Plaintiff caused a cost savings to Defendant deserving compensation.

## III. Discussion

### A. Law

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS,* 998 F.2d 979 (Fed.Cir. 1993). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must resolve any doubts about factual issues in favor of the nonmoving party, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed.Cir.1998), and draw all reasonable inferences in its favor. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed.Cir.1995).

### B. Analysis

In determining whether there is a genuine issue of material fact as to whether Plaintiff provided a timely and compliant VECP establishing its entitlement to compensation, the Court considers each alleged VECP separately. The first alleged VECP concerns Plaintiff's importation of stone for the rip-rap. The second alleged VECP relates to Plaintiff's negotiation of a lower-than-anticipated price for the disposal of flood flow sediment excavated from the channel.

> 1. Plaintiff's Importation of Grouted Stone for the Rip–Rap
>
>    a. Was there a change to the contract?

■ Pursuant to the contract, Plaintiff was required to construct a rip-rap, a layer of grouted stones built on the embankment of the channel to prevent erosion. The first issue before the Court in determining whether Plaintiff's proposal was a valid, timely VECP is whether the proposal was in actuality a change to the contract. The proposal Plaintiff deems a VECP stems from the October 28, 1997 meeting between the parties[2] and the subsequent letter of the same date, sent from Plaintiff's Project Manager, Mr. Paul Biere, to Contracting Officer Representative Ms. Lori Satrom, memorializing the discussion. Despite Defendant's assertion that no change occurred because ¶ 2.1.3.1 of Section 02600 of the contract called for the submission of stone from another source if the on-site stone was insufficient for the rip-rap, the Court concludes that there was a change to the contract in light of the general requirement of ¶ 2.3.2, that grouted stone be produced by processing material *within* the channel.

By October 28, 1997, when the parties discussed seeking an alternative source for production of grouted stone for the rip-rap, there was no indication that the on-site stone was insufficient. Up to that point, Plaintiff had excavated and processed approximately 60,000 cm of stone from the streambed channel that had yielded less than 3,000 cm of grouted stone for the rip-rap. An additional 183,000 cm of material remained that still could have been excavated and processed to

---

1. Prior to filing the complaint, the parties engaged in settlement discussions that proved unsuccessful in resolving the dispute. Because of these settlement discussions, the contracting officer did not issue a final decision on the claim at issue prior to Plaintiff filing the complaint before the Court. *See* 41 U.S.C. § 605(a)(detailing procedures for submitting a claim to the contracting officer and either receiving a final decision or

having a deemed denial). Nevertheless, the Court determined at oral argument held on July 24, 2001, that the claim was a deemed denial.

2. At the October 28, 1997 meeting, the parties discussed the cost savings that could be realized from importing stone for the rip-rap from the San Gabriel River.

yield enough stone to meet the contractually required amount of 9,100 cm. Thus, while the procedure up to that point had been lengthy and not yet fully successful, there was no indication that the large amount of remaining material would have been insufficient to yield the required amount of grouted stone for the rip-rap. Rather, because each cubic meter of material cost Defendant a unit price of $16,[3] the true deterrent to continuing the on-site procedure was the likely amount that would have been required to complete the excavation and processing of grouted stone.[4] Therefore, the parties subsequently adopted contract Modification P00007 on January 28, 1998. The modification allowed for the importation of grouted stone for the rip-rap. By implication, such a modification denotes a change to the original contract provisions. Thus, despite Defendant's arguments to the contrary, there was a change to the contract.

### b. Was there a compliant VECP?

In light of the fact that importing grouted stone for the rip-rap prior to excavation and processing of the remaining 183,000 cm of on-site material was a change to the contract, the next issue before the Court is whether the importation was a value engineering change proposal. To be a VECP, the proposal must be timely and comply with the requirements set forth in FAR 52.248–3(c)(1)–(7). In addition, there is debate among the parties about whether the proposal must be in writing in order to comply with FAR 52.248–3(d).

Based on strict adherence to the seven compliance requirements of FAR 52.248–3(c)(1)–(7), the Court agrees with Defendant's assertion that Plaintiff made no value engineering change proposal to the government.[5] Plaintiff argues in its brief that each of the requirements was satisfied by discussions taking place at the October 28, 1997 meeting between the parties. Because the Court found no such evidence to support this contention, the Court requested at oral argument held on November 15, 2001, that Plaintiff point to specific documentation to support its position that components (c)(1)-(c)(7) were satisfied. Plaintiff pointed to the October 28, 1997 meeting notes taken by Mr. Don Baer, Plaintiff's Assistant Project/Quality Control Manager for the project, the letter of the same date from Ms. Satrom to Mr. Biere, as well as Modification P00007 and several declarations of current and former Plaintiff employees as to the discussions occurring at the October 28, 1997 meeting.[6] The information yielded from these sources fails to satisfy the VECP requirements.

First, Mr. Baer's notes from the October 28, 1997 meeting and the letter of the same date from Ms. Satrom to Mr. Biere indicate at most that Plaintiff presented Defendant a cost proposal for importing grouted stone from the San Gabriel River near Fish Canyon, that the proposal was compared to the cost of continuing the on-site excavation and processing, and that Mr. George Beams, the Contracting Officer's Representative, would issue a contract modification to begin importation.[7] Second, Modification P00007 states that the change to the contract is the importation of stone for the rip-rap, that the modification falls under the Differing Site

---

3. This cost breaks down to $7.00 for each cubic meter of excavation and $9.00 for each cubic meter of miscellaneous fill.

4. Plaintiff asserts that excavation and processing of the remaining 183,000 cm of on-site material would have cost Defendant $2.9 million. Defendant argues that because Plaintiff did not excavate the remaining material, it cannot determine how much of the material it would have had to process to produce the required 9,100 cm.

5. Because the Court finds that the importation proposal did not comply with the requirements of FAR 52.248–3(c)(1)–(7), its timeliness is irrelevant.

6. The relevant declarations include those of Mr. Paul Biere, Plaintiff's Project Manager, Mr. Baer, and Mr. Donald D. Gladden, former Division Manager for Plaintiff.

7. The notes also indicate that the importation is not a value engineering change. According to Mr. Baer, it was Mr. Beams who made the statement and Mr. Baer merely recorded it. Moreover, according to the declaration of Mr. Biere, Mr. Baer stated that the importation was a value engineering change. Due to the lack of clarity regarding who made the statement indicated in the meeting notes, the Court chooses not to include it as a basis for its rationale.

Conditions clause (FAR 52.236–2), that the contract amount is increased by $467,760, and that Plaintiff has an additional 45 days to complete performance of the contract. Third, the declaration of Mr. Biere puts forth that Mr. Baer intended the content of the meeting to serve as a value engineering change proposal (even though Mr. Beams countered that this was not a value engineering change proposal), that the parties discussed the advantages of importing the stone, and that they discussed that the cost of the modification must be kept to under $500,000 to avoid a government audit. Fourth, the declaration of Mr. Baer specifies that he explicitly stated his intention that the discussions occurring at the October 28, 1997 meeting be a value engineering change proposal. Finally, the declaration of Mr. Gladden indicates that the concept of a value engineering change proposal was never discussed in connection with the modification because it was not a cost to either party, but rather a savings.

The information, when taken cumulatively, is insufficient to meet the seven compliance requirements for a valid VECP. Plaintiff provides no list and analysis of contract requirements that must be changed if the alleged VECP is accepted. Plaintiff fails to include a separate and detailed cost estimate for the affected portions of the existing contract requirements as well as the alleged VECP, but instead merely provides the amount of increase of the contract. Further, Plaintiff fails to describe and estimate the costs that the Government may incur in implementing the alleged VECP or predict any effects that the proposed change might have on collateral costs to the agency. FAR 52.248–3(c)(1)–(7).

As an alternative argument, Plaintiff claims that the notice requirements are not to be strictly construed. Specifically, Plaintiff asserts that failure to label a proposal as a VECP does not disqualify such a proposal. In support of its position, Plaintiff cites *McDonnell Douglas Astronautics Co.*, ASBCA No. 19971, 76–2 BCA 12117, 1976 WL 1947, and *Appeal of Syro Steel Co.*, ASBCA No. 12530, 69–2 BCA P 8046, 1969 WL 797. These cases can be distinguished, however, as the instant case is not merely

one concerning failure to properly label a value engineering change proposal. Rather, the requirements for a valid VECP, to which the Court strictly adheres (as Plaintiff can point to no case law indicating that the Court is entitled to do otherwise), are not satisfied here, causing the proposal to fail as a VECP.

Finally, Plaintiff argues that a VECP need not be in writing. Careful consideration of this issue indicates that while a writing is not formally required by FAR 52.248–3(c)(1)–(7), the absence of a written proposal weakens Plaintiff's contention that the proposal is a VECP. For example, FAR 52.248(d), titled "Submissions," instructs the Contractor to submit VECPs to the Resident Engineer with *a copy* to the Contracting Officer. The instruction that a copy should be made of the VECP implies that the VECP itself should be in writing. Moreover, in *Kromer,* the Armed Services Board of Contract Appeals stated that "[t]he clause [VECP] clearly contemplates a written proposal substantiated by detailed documentation rather than an informal oral suggestion." *Appeal of Kromer, Inc.*, ASBCA No. 23820, 80–2 BCA P 14465, 1980 WL 2859. Regardless of these examples, it is unnecessary in this case for the Court to determine whether VECPs must be in writing because Plaintiff's failure to comply with the seven aforementioned requirements precludes Plaintiff from recovering for a value engineering change proposal. It is worth noting, however, that the lack of a written proposal here further diminishes Plaintiff's argument in favor of compensation.

    c.   Does Modification P00007 constitute an accord & satisfaction?

■ Despite the Court's finding that there was no compliant VECP, the Court must consider whether the issuance of Modification P00007 served as full compensation to Plaintiff. To prove accord and satisfaction, the Defendant must prove: (1) proper subject matter jurisdiction; (2) competent minds; (3) a meeting of the minds; (4) consideration; and (5) the acceptance of payment or performance in satisfaction of a claim or demand which is a bona fide dispute. *Starflight Boats v. United States*, 48 Fed.Cl. 592, 601 (2001). In this case, the relevant

issue is whether there was a meeting of the minds as to what constituted the modification. Defendant specifically notes that Part D of Modification P00007 states that the adjustment was full compensation for "all costs and markups directly or indirectly attributable for the change ordered, for all delays related thereto, for all extended overhead costs, and for performance of the change within the time frame stated." According to Defendant, this statement precludes Plaintiff from additional compensation based on the work.

While Defendant may be correct in its assertion that Modification P00007 provides complete and total compensation for additional costs, the Court does not consider the modification to be a meeting of the minds preventing any governmental savings from being passed on to Plaintiff. The subject of the modification was to further compensate Plaintiff for costs associated with the importation of grouted stone for the rip-rap. Plaintiff's proposal that grouted stone be imported was made to save the Government money. Because the purpose of value engineering is to pass a savings on to the contractor if its suggestion does indeed save the Government money, the Court sees no way in which a modification compensating Plaintiff for additional *costs* associated with a change to the contract should serve to bar Plaintiff from its percentage of governmental *savings*. Thus, Modification P00007 does not constitute an accord and satisfaction. Regardless, Plaintiff cannot recover because its proposal does not comply with the VECP requirements (as discussed *supra*).

2. Plaintiff's Lower than Anticipated Price for the Storm Channel Cleanout

Plaintiff's second claim for compensation based on an alleged VECP deals with Plaintiff's removal of 100,000 cm of sediment, rock, and debris deposited in the Santa Paula channel due to severe winter storms in late 1997 and early 1998. Again, the Court must determine whether Plaintiff provided a compliant VECP to Defendant. Here, the only evidence in support of Plaintiff's claim for a

VECP is a four-sentence letter written on February 11, 1998, from Mr. Biere to Ms. Satrom. The letter indicates that if the removal of materials from the storm channel were to become necessary, Plaintiff would attempt to negotiate a less expensive price than the contract unit price for excavation ($7.00/cm), which would result in a savings to the Government. The letter makes no reference to any alleged VECP and fails to meet any of the seven requirements (discussed *supra*) of FAR 52.248–3(c). For example, the letter does not provide a list and analysis of the contract requirements that must be changed if the alleged VECP were to be accepted, nor does it describe and estimate the costs that the Government might incur in implementing the alleged VECP or predict any effects that the proposed change would have on collateral costs to the agency.

Moreover, when asked at oral argument whether the February 11, 1998 letter satisfied the requirements for a valid VECP, Plaintiff admitted that the letter was legally insufficient and was an imperfect attempt to make a value engineering change claim. Applying FAR 52.248–3(c), the Court agrees with this assertion by Plaintiff and finds that Plaintiff cannot recover for value engineering as to the storm channel cleanout.[8]

## IV. Conclusion

Because there is no genuine issue of material fact that Plaintiff failed to comply with the requirements of FAR 52.248–3(c), as a matter of law Plaintiff cannot recover for its alleged value engineering change proposals. Therefore, Defendant's Motion for Partial Summary Judgment is GRANTED.

The parties are ORDERED, within 10 days of the entry of this opinion, to file a joint status report advising the Court on further proceedings necessary in this case and providing the Court three mutually agreeable dates for a status conference.

---

8. Again, because the alleged VECP is not compli-   ant, its timeliness is irrelevant.