**ICSD CORPORATION, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 90–1515.**

United States Court of Appeals,
Federal Circuit.

May 28, 1991.

**314**

Thomas J. Touhey of Dempsey, Bastianelli, Brown & Touhey, Washington, D.C., argued for appellant. Of counsel were Adrian L. Bastianelli, III, Geoffrey T. Keating, and Lisa A. Federici.

Reginald T. Blades, Jr. of the Civ. Div., Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Terrence S. Hartman, Asst. Director.

Before MICHEL and CLEVENGER, Circuit Judges, and BENNETT, Senior Circuit Judge.

BENNETT, Senior Circuit Judge.

ICSD Corporation (ICSD) appeals the decision of the Armed Services Board of Contract Appeals (Board) rejecting ICSD's challenge to the Contracting Officer's final decision on several issues relating to ICSD's share of cost savings resulting from a Value Engineering Change Proposal. *ICSD Corporation*, ASBCA No. 28028, 90–3 BCA ¶ 23,027 (Delman, A.J.). We affirm.

## BACKGROUND

ICSD contracted with the Army for the sale of night vision gun sights. The sights required special purpose military mercury batteries to operate. Under ICSD's contract, the batteries were deemed to be a "major component" of the sights but were not manufactured or delivered to the Army under the contract.

The contract included a standard Value Engineering Incentive clause. *See* ASPR 7–104.44(a)(1) (1974 APR); 32 C.F.R. § 7.104–44(a)(1) (1974). Under that clause, the government invites contractors to submit cost savings ideas in the form of Value Engineering Change Proposals (VECPs). If a VECP is accepted by the government, the contractor may receive a share of the cost savings. If the savings are characterized as contract savings, the award is a 50% share. If, on the other hand, the savings are characterized as collateral savings, the award is a 20% share.

ICSD submitted a VECP suggesting the use of standard "AA" size alkaline batteries instead of the special mercury batteries. Alkaline batteries were much cheaper to acquire and use. After some reluctance on the part of the government, ICSD's VECP was accepted.

While ICSD's VECP was under consideration, the government was independently considering the use of lithium batteries instead of mercury batteries. Like alkaline batteries, lithium batteries provided many advantages over mercury batteries. For example, lithium batteries operated well over all military temperature ranges, eliminating the need for cold weather adapters, and they were believed to have no special storage or disposal requirements.

The switch to "AA" alkaline batteries resulted in significant savings for the government. The alkaline batteries cost less than both mercury batteries and lithium batteries. The Contracting Officer determined that the savings were over $1 million per year and awarded ICSD a share of those savings. However, the Contracting Officer determined that the savings were "collateral" to the contract and that

the award share was 20%, not the 50% that ICSD sought. In addition, ICSD had alleged that the government realized other collateral cost savings due to the increased safety of alkaline batteries, reduced disposal costs, reduced logistics costs, and elimination of the need for a cold weather adapter. No award was made for those savings.

While ICSD's proposal was under consideration, another company, Numax Electronics, Inc. (Numax), submitted a similar VECP. The government evaluated both proposals and determined that ICSD's was superior in three areas while Numax's was superior in one. Therefore, the government split the savings share award, giving 75% of the award to ICSD and 25% to Numax.

On appeal to the Board, ICSD challenged the Contracting Officer's characterization of the cost savings as collateral savings. The Board affirmed, holding that the value engineering incentive clause provided for a 50% award on future purchases of "the item" or of "essentially the same" item as that to be acquired by the government under the subject procurement. The Board held that the battery was an item related to the contract, rather than the subject of the contract. Therefore, the savings on the battery cost were collateral savings, and ICSD was entitled to a 20% award.

The Board also rejected ICSD's challenge to the Contracting Officer's determination not to make an award for the other collateral cost savings. The Board held that some of the alleged savings were not "ascertainable," as required by the incentive clause. Other savings would have been realized using the new lithium battery planned by the government and so were not attributable to the VECP. Finally, the Board rejected ICSD's appeal of the decision to split the award between ICSD and Numax as no abuse of discretion had been shown.*

## DISCUSSION

 Our review of the Board's decisions is limited. Under 41 U.S.C. § 609(b)

(1988), factual findings "shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." Legal conclusions are freely reviewable. *Afro–Lecon, Inc. v. United States,* 820 F.2d 1198, 1200–1201 (Fed.Cir. 1987). The Board's interpretation of a contract, while freely reviewable as a question of law, is afforded careful consideration and great respect. *See Alvin, Ltd. v. United States Postal Service,* 816 F.2d 1562, 1564 (Fed.Cir.1987).

### A. "Acquisition" Savings Versus Collateral Savings

 The Board correctly determined, as a matter of law, that the cost savings due to the lower acquisition cost of alkaline batteries were collateral savings under ICSD's contract.

The Value Engineering Incentive clause of ICSD's contract provided for a 50% savings share award for savings realized under (1) the instant contract, (2) concurrent contracts, or (3) future contracts. Instant contract savings were defined as "the unit cost reduction times the number of units affected in the instant contract." Concurrent contract savings are those realized when "the VECP accepted under this contract is used on *concurrent* contracts of the purchasing office for *essentially the same item.*" (Emphasis added.) The future contracts provision, on which ICSD bases its 50% award claim, states:

> If the VECP accepted under this contract is used on *future* purchases of *essentially the same item* by the purchasing office, or its successor, the Contractor shall share in the savings....

(Emphasis added.) When read as a whole, it is clear that the incentive clause provides for a 50% cost savings share when the VECP reduces the cost of "the item" or

---

* During this decade-long litigation over the award of a share of cost savings, both ICSD and the government raised many other issues. The facts discussed in this opinion relate only to the issues preserved on appeal.

"essentially the same item" as that to be acquired under the contract. Because batteries were not acquired by the government under ICSD's contract, battery cost savings are not subject to the 50% share award.

In contrast to the 50% contract savings award provisions, the collateral savings provision of the incentive clause awards a 20% share of collateral savings. That award applies:

> [i]f an accepted VECP results in a measurable net reduction in the cognizant Military Department's overall documentable projected costs of maintenance, *operation,* logistic support or *Government-furnished property* ....

As the Board correctly held, the savings realized by the government as a result of the lower cost of alkaline batteries fell into the collateral savings category as either reduced cost of operation of the night vision sights acquired under the contract or reduced cost of government-furnished property.

ICSD first argues that mercury batteries were defined to be a major component of the night vision sight system, and its contract required ICSD to value engineer the entire system, including the battery. Regardless of the scope of ICSD's value engineering obligations, the contract explicitly defined which cost savings were subject to a 50% share award and which were subject to a 20% award.

ICSD also reads the "Future Contracts" provision to mean that ICSD would receive a 50% savings share award on "acquisitions" of the item subject to the VECP. Under ICSD's argument, any savings realized by the government on acquisitions of the VECP item are subject to a 50% share award, while all other savings are collateral and subject to a 20% award. ICSD's construction is unreasonable. Nowhere does the incentive clause extend the 50% share award to all "acquisitions" of the VECP item. Rather, as discussed above, the 50% share applies when the VECP item is the subject of the instant contract and, in that case, when essentially the same item is

the subject of concurrent and future contracts.

Finally, ICSD argues that the policy of the incentive clause would be thwarted in this case if ICSD does not get its "fair share" of the savings. That argument is unpersuasive. The incentive clause provides for a "fair share" of 50% if the savings are contract savings and 20% if the savings are collateral. The 50% award provides a greater incentive to contractors who submit VECPs which reduce the cost of contract items and which would possibly reduce the price of those contracts. On the other hand, contractors such as ICSD require less of an incentive to make cost savings proposals where the reduced cost does not relate to items furnished under the contract.

Neither *Philco–Ford Corp.,* ASBCA No. 16197, 73–1 BCA ¶ 9917, nor *Mishara Constr. Co., Inc.,* ASBCA No. 17957, 75–1 BCA ¶ 11,206, compels a contrary result. In *Philco–Ford,* the Board suggested that savings resulting from the VECP's "ripple effect" may be subject to a 50% award. However, the Board did not determine whether in fact the savings were instant contract savings, future contract savings, or collateral savings, and it left open the possibility that a lesser award could be made. In *Mishara,* the "peculiar circumstances" referred to by the Board in making a 50% award appear to relate to the manner in which the VECP was implemented, not to the question of whether the savings were contract or collateral savings.

B. *Other Collateral Savings*

■ ICSD also appeals the denial of a share of other collateral savings allegedly realized by the government but omitted from the savings calculation. ICSD first argues that section 48.102 of the Federal Acquisition Regulations "creates an affirmative duty on the part of the Government to determine and pay ICSD's fair share of the savings." ICSD states that the government recognized that alkaline batteries were safer and would result in reduced disposal and logistic costs. ICSD argues that the government failed to consider those factors in attempting to calculate the

cost savings. According to ICSD, the Board erred by placing the burden on ICSD to prove the cost savings. We disagree. Under the contract, when there is a "measurable" net reduction in the "documentable" collateral costs, ICSD is awarded a 20% share in the "ascertainable" collateral savings. The Board found that several of the alleged collateral savings were not "measurable," "documentable," or "ascertainable," and that ICSD's proffered estimates of the savings amounts were neither reasonable nor credible. ICSD has shown no error in those findings, and we do not see how the burden is on the government to "ascertain" a share of "unascertainable" savings. Therefore, under its contract, ICSD is not entitled to an award for those savings.

■ ICSD also argues that the Board erred in finding that certain collateral savings were attributable to the government's proposed lithium battery and not to ICSD's VECP. ICSD argues that there is no evidence that the lithium batteries were ever used in the scopes and so there is no evidence to support the conclusion that the collateral savings were attributable to the lithium batteries. The evidence ICSD cites is not especially persuasive and relates to what occurred after the Contracting Officer's decision in this case. As the Board found, when the Contracting Officer made his decision concerning the collateral savings award, the government intended to replace the mercury batteries with lithium batteries, thereby overcoming many of the safety and disposal problems and the need for cold weather adapters. Substantial evidence supports the Board's finding that at the time of the award decision in this case the collateral savings were attributable to the introduction of the lithium battery.

C. *Splitting the Savings Award*

ICSD challenges the decision to split the VECP award between ICSD and Numax.

First, we observe that the Board found that "[ICSD] does not suggest that Numax wrongfully appropriated [ICSD's] idea or design." ICSD now alleges that there is no evidentiary support for the finding that Numax developed its VECP independently of ICSD. Because this argument was not raised before the Board, we do not consider it here.

■ Our precedent permits the split of savings awards between contractors submitting accepted VECPs. *NI Indus., Inc. v. United States*, 841 F.2d 1104 (Fed.Cir. 1988). In this case, Numax's proposal was submitted after ICSD's proposal, but both were under consideration at the same time, and Numax's VECP was found to be superior in one major category. ICSD has not shown that the decision to split the award in this case or the percentage awarded each contractor was arbitrary or capricious or an abuse of discretion.

CONCLUSION

The Board did not err in concluding that the cost savings to the government resulting from ICSD's proposal were collateral savings under the contract. In addition, ICSD has not shown that the Board erred in affirming the decision that other collateral savings were not ascertainable or were due to the government's planned introduction of lithium batteries. Finally, ICSD has shown no abuse of discretion in the government's decision to split the award between contractors. The decision of the Board is affirmed.

AFFIRMED.