ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                          )
                                                     )
Herman JCG Co. JV[1]                                 )        ASBCA No. 63235
                                                     )
Under Contract No. N62473-18-D-5822                  )

APPEARANCES FOR THE APPELLANT:            Jon G. Lycett, Esq.
                                            General Counsel
                                            Escondido, CA

                                          Steven J. Stuart, Esq.
                                            Smith, Currie, & Hancock LLP
                                            Atlanta, GA


APPEARANCES FOR THE GOVERNMENT:           Craig D. Jensen, Esq.
                                            Navy Chief Trial Attorney
                                          Michael W.S. Hayes, Esq.
                                            Trial Attorney


OPINION BY ADMINISTRATIVE JUDGE ARNETT

This appeal arises from a design-build contract awarded by the Department of the Navy (the government or Navy) to appellant Herman JCG Co. JV (Herman) and turns on whether Herman is entitled to share in savings resulting from a proposal that was initially submitted as a change and subsequently submitted as a Value Engineering Change Proposal (VECP). Herman asserts that its proposal was always a VECP and seeks to share the contract savings consistent with a VECP (app. br. at 10-15). The Navy denies that the proposal satisfies the requirements for a VECP and contends that it conditionally accepted the change proposal prior to its disclosure as a VECP (gov't br. at 21-24; gov't reply at 7). The Navy denies that it constructively accepted the VECP by allowing Herman to construct the project using its phased approach (gov't br. at 2, 26-27).

---

[1] Although this matter was originally filed and docketed under the name of Herman Construction Group, Inc., we construe this appeal as filed under the name of Herman JCG Co. JV because the joint venture (JV) is a party to the contract at issue, and appellant's filings consistently reflect that this matter was brought on behalf of the JV. The case caption has been corrected.

The Board has jurisdiction over this appeal pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109.  The parties elected to submit this appeal on the record pursuant to Rule 11 and requested that the Board decide entitlement only.

Because we conclude that the government constructively accepted Herman's VECP, the appeal is sustained.

FINDINGS OF FACT

*Background:*

1.  On October 25, 2017, the Navy awarded an Indefinite Delivery Indefinite Quantity Multiple Award Construction Contract (the Contract) to Herman for new construction, renovation, and repair of general building construction at various installations in the Southwest (*see generally* R4, tab 1).  On September 18, 2019, the Navy awarded a firm-fixed price task order against the Contract for Design-Build Repair MCCES Operation Building 1737, Marine Corps Air Ground Combat Center, Twentynine Palms, California (R4, tab 9 at 113-14).[2]  Design and construction of the renovation were to be completed by July 5, 2021 (*id.* at 115).  During construction, the 27,340 SF building was to be "non-operational and vacated," and the work was not required to be phased (R4, tab 67 at 1823, 405).  Thus, the occupants of the administrative/office space (approximately 5,785 SF) and classrooms (approximately 12,633 SF) in Building 1737 would have to relocate to swing space for more than a year while construction was completed (*id.*, R4, tab 47 at 2402).

2.  For swing space, the task order required Herman to provide "temporary modular office facilities for the duration of the renovation" and included floor plans for two groups of trailers totaling 7,200 SF (R4, tabs 67 at 556, 135 at 2282-91).  The trailers were intended to serve as "admin space and storage only" because the government was "consolidating down" its classrooms (R4, tab 76 at 1950).  Floor plans for the trailers indicated the required configuration and furniture for offices, cubicles, work areas, conference rooms, and restrooms (R4, tab 135 at 2283-84).  Based upon the size and configuration of the temporary trailers depicted in the floor plans, the trailers do not appear to be sufficient or intended to serve as swing space for the entire building (R4, tab 135 at 2283-84).

---

[2] Documents in the Rule 4 file are numbered using a letter prefix and leading zeros.  For ease, we have dropped the prefix and leading zeros in this decision.

*Herman's proposal:*

3.  On October 21, 2019, Herman verbally proposed "eliminating the trailers and their related cost by phasing the project" (R4, tab 137 ¶ 8).  On October 23, 2019, Herman submitted a plan which proposed "phasing the project rather than utilizing temporary trailers to house the administration staff" (R4, tabs 41 at 1334-35, 19 at 252-53).  As proposed, Phase 1 would include renovation of the classroom side of the building allowing the administration staff to remain in place throughout Phase 1 (R4, tab 19 at 252).  Upon completion of Phase 1, the administration staff would temporarily occupy the newly renovated classroom side during renovation of the administration/office space in Phase 2 (*id.*).  The phasing plan included a color-coded drawing depicting the portions of the building associated with Phases 1 and 2 (*id.*).  Herman's proposal identified benefits to the government arising from phasing including allowing the administration staff to "occupy their current space for a longer period of time" (*id.* at 253).  Contemporaneous internal government emails noted that the Navy could request a credit and stated concurrence with the plan subject to a few conditions (R4, tab 41 at 1332-34).  We find that Herman's phasing plan proposed a change to the contract.

4. On November 4, 2019, the Navy responded that it would "consider" phasing subject to three conditions:  1) provision of 1,000 SF of climate-controlled storage with shelving; 2) responses to several Requests for Information (RFIs); and 3) a credit to the government for "all of the trailers and setup that are not going to now be done for this project" (R4, tab 41 at 1331-32).  Indicating that it would be a "negotiated credit," the Navy closed by stating, "If you are going to pursue this please submit an RFI with ROM solution / proposals for all of this and we can proceed forward" (*id.*).

5.  On November 18, 2019, Herman provided an itemized list of anticipated costs and savings and estimated a potential net savings of $151,400 for phasing in lieu of temporary trailers (R4, tab 38 at 7).  Government comments from the 45% design review on November 21, 2019 state, "Temporary Trailer issue needs resolution.  Reasonable deduct and no extension to contract time line" (R4, tab 47 at 2446).  Notes from a December 3, 2019 design meeting indicated, "HCG proposed a $150k credit to GOV to eliminate trailers.  Under consideration by GOV . . . Customer prefers the phased program.  GOV Asset mgr concerned about big-picture value to GOV.  Some discussion needed between GOV team members" (R4, tab 43 at 1419).

6.  On December 11, 2019, Herman submitted RFI 008 requesting approval to delete the temporary trailers and proceed with its phasing plan (R4, tab 20 at 254).  On the RFI, Herman marked three separate boxes indicating "High" priority, potential time/cost impact, and "Critical Path" (*id.*).  Six weeks elapsed before the Navy responded on January 23, 2020 and acknowledged a need to "negotiate this asap:"

> The government agrees with the position of ONLY 1000
> S.F. climate controlled trailers for storage and the
> remainder would be a credit to the government. Phasing is
> acceptable for this project with credit to the government.
> Until that is negotiated it cannot be said a definitive yes,
> but IF all parties can agree upon a settlement it is the way
> forward preferred.

(R4, tabs 41 at 1329, 20 at 254)

7. On April 1, 2020, the Navy issued a proposed change/request for proposal under the task order to Herman to reduce the required trailers to approximately 1,000 SF of climate-controlled storage with shelving and sought pricing for a credit for the trailers, utilities, setup/teardown, and computer workstations that were no longer needed (R4, tab 21 at 257). Herman submitted proposals in April and May 2020 (R4, tabs 45 at 2332-54, 46 at 2355-95). Each submission proposed costs savings for eliminating the modular trailers as well as additional costs associated with phasing such as utilities, providing the 1,000 SF climate-controlled storage, and building out the classrooms for temporary occupancy during Phase 2 (*id.*).

8. Both Herman's 100% and Issued for Construction (IFC) designs provided for phased construction and the IFC design reduced the trailers to only 1,000 SF of climate-controlled storage (R4, tab 43 at 1352, 1461, 1579; tab 47 at 2401, 2546). On June 2, 2020, Herman followed up, "This needs to be confirmed before we are able to begin." (R4, tab 48 at 3393). After mobilizing on June 8, 2020, Herman emailed the Navy stressing the urgency to negotiate the change because demolition was scheduled to begin within a few days (R4, tab 51 at 3457-58; gov't br. at 11). On June 10, 2020, the Navy Senior Construction Manager (CM) responded and copied the contracting officer: [3]

> If we, the government, receive your IFC drawings and the
> beginnings of a Baseline schedule (received and we
> schedule areview (sic) to accept), we have no restrictions
> for actual Demo / Construction work to begin next week –
> June 15, 2020. The government like HCG want to very
> much get the negotiations of the trailers completed as soon
> as we can, but it is not a government contract restriction,

---

[3] We note that the contracting officer copied on this email is the same contracting officer who denied Herman's claim. In the final decision, she denies that the government accepted the phasing plan. Rather, she states that it was conditionally accepted but the condition precedent (negotiation of an acceptable credit) was never fulfilled. (R4, tab 31 at 322)

nor delay, if it is not completed by that date. RFI 008 commits the government to that position for construction execution of Phasing and (sic) is our desire to make this happen.

(R4, tab 53 at 3464)

9. There is no evidence that the Navy Senior CM was a warranted contracting officer (gov't reply at 12). Thus, we find that he lacked authority to approve a change to the contract and, accordingly the government did not constructively accept Herman's phasing plan through its response to RFI 008.

10. On June 15, 2020, Herman began demolition, and government personnel actively cooperated with the phased approach (gov't br. at 13). Despite several exchanges in June and July 2020, the parties were unable to reach agreement on a credit for phasing and deletion of the trailers (*see generally* R4, tabs 101-02).

*Herman identifies its proposal as a VECP.*

11. On August 7, 2020, Herman submitted a "Notice of Value Engineering Change Proposal – FAR 52.248-3" which stated that its phasing proposal "is now and has always been properly viewed as a Value Engineering Change Proposal ('VECP') pursuant to FAR 52.248-3" (R4, tab 23 at 261). Herman asserted that it previously had provided the information required by Federal Acquisition Regulation (FAR) 52.248-3, its proposal met the criteria for a VECP, and that the government only had to have notice that the request was a VECP prior to issuance of a modification (*id.*). Herman requested that the government identify any required form or additional information needed and stated, "[P]lease consider this letter notice that Herman is seeking to have its proposal accepted as a VECP . . ." (*id.*). We find that the government was on notice, as of August 7, 2020, that Herman considered its phasing plan to be a VECP. We also find that no government representative with authority to change the contract had accepted the phasing proposal or incorporated it into the contract prior to its identification as a VECP on August 7, 2020.

12. The Contract included FAR 52.248-3 VALUE ENGINEERING – CONSTRUCTION (OCT 2015) and FAR 52.248-3 Alt I, VALUE ENGINEERING – CONSTRUCTION (OCT 2015) – Alternate I (APR 1984) (R4, tab 1 at 28). The clauses define a VECP as a proposal that

(1) Requires a change to this, the instant contract, to implement; and

5

(2) Results in reducing the contract price or estimated cost without impairing essential functions or characteristics; provided, that it does not involve a change

 (i)  In deliverable end item quantities only; or

 (ii)  To the contract type only.

FAR 52.248-3(b). Pursuant to the clause, A VECP must include (1) a description of the difference between the existing contract requirement and that proposed, (advantages/ disadvantages); (2) an analysis of the contract requirements that must be changed if the VECP is accepted, including any suggested specification revisions; (3) a separate, detailed cost estimate for the affected portions of the existing requirement and the VECP; (4) a description and estimate of costs the government may incur in implementing the VECP (e.g. test and evaluation and operating and support costs); (5) a prediction of any effects the proposed change would have on collateral costs to the agency; (6) a statement of the time by which a contract modification accepting the VECP must be issued in order to achieve the maximum cost reduction, noting any effect on the contract completion time or delivery schedule; and (7) identification of any previous submissions of the VECP. *Id.*

13. As of August 7, 2020, Herman was seven weeks into construction with eleven months remaining to complete the project (R4, tab 9 at 115). According to the approved baseline schedule,[4] Herman should have been finished with Phase 1 demolition and abatement and began framing and rough-in (R4, tab 58 at 3519). The baseline schedule included a 30-day activity between Phases 1 and 2 to move occupants to the swing space (*id.* at 3520). Throughout construction, Herman remained 2-4 weeks ahead of schedule (R4, tab 116 at 2223). Upon notification on August 7, 2020 that Herman intended its phasing plan to be a VECP, the contracting officer could have required Herman to adhere to the original contract terms by providing temporary trailers, moving building occupants to the trailers, and completing the balance of the renovation with Building 1737 unoccupied.

14. On September 8, 2020, the contracting officer rejected Herman's August 7, 2020 VECP stating that while "it appears that this proposal would require a change in contract terms," the credit to the government did not qualify for VECP consideration because the change would impair government function due to "non-availability of space in the temporary trailers"[5] (R4, tab 24 at 263-64). The contracting officer

---

[4] Because the record includes very little as-built information, the Board relies upon the approved baseline schedule and its projected status of the project for August 2020.

[5] We note that, at the time of this assertion regarding impairment of government function and displaced personnel, the project was still in Phase 1 (R4, tab 109 at 2204-05). Thus,

6

deemed the proposed savings as "a straight credit back to the Government" (*id.*). We find no evidence in the record of any government demand or direction, after rejection of the VECP, that Herman provide the temporary modular trailers required in the original contract or abandon its phased approach to the project.

15. On September 9, 2020, the contracting officer unilaterally executed Modification No. P00002 which incorporated Herman's Final Design Drawings and Specifications into the contract (R4, tab 11 at 224-25). Herman's Final Design[6] included phasing and reduced the trailer requirement to only 1,000 SF of climate-controlled storage (R4, tab 47 at 2401, 2546). It specifically stated,

> The scope of work will be performed in two phases, utilizing the existing north/south area separations of the building. The north phase work will occur first, followed by the south end . . . The classroom function will be relocated by the GOV to another area and administrative functions will maintain operation in this building, operating in the area of the building not under construction."

(*id.*). We find that the contracting officer, with full knowledge that Herman considered its phasing plan to be a VECP, accepted the phasing plan as part of the Final Design and incorporated it into the contract through Modification No. P00002.

16. On November 12, 2020, Herman requested reconsideration of its VECP arguing that the government had constructively accepted and received the benefit of the VECP (R4, tab 25 at 265). Herman indicated that it would continue to negotiate a credit while reserving its right to share savings from its VECP (*id*. at 267).

17. By November 20, 2020, the parties agreed that the cost savings associated with phasing in lieu of trailers was a net credit of $284,997 (R4, tab 116 at 2221-23). The net negotiated credit included cost savings for deleting the trailers as well as additional HVAC, electrical, and comm/data/fire alarm costs associated with phasing as well as an allowance to build out the classrooms for temporary occupancy during Phase 2 (*id.*; R4, tab 26 at 287). Herman declined to sign a modification without apportionment of the credit consistent with a VECP (app. proposed finding of fact ¶ 42; R4, tabs 114 at 2215-17, 116 at 2221). To date, no modification has been executed

_____

the administrative/office personnel originally slated to use the temporary trailers as swing space remained in their offices in Building 1737 throughout Phase I.

[6] We understand and use the term, "Final Design," to refer to Herman's IFC design at R4, tab 47.

to capture the cost savings associated with this change (R4, tab 31 at 322; gov't br. at 16).

18. After the government was on notice that Herman considered its phasing plan to be a VECP, the government continued to approve submittals implementing the phasing plan (R4, tabs 61 at 3556, 66 at 3807). On November 30, 2020, the contracting officer accepted completion of the Phase 1 work (R4, tab 109 at 2204-05).

19. We find that, through execution of Modification No. P00002, the government constructively accepted Herman's phasing plan as a VECP. Further, we find that the amount of the credit was unknown at the time of acceptance, and monetary costs were not the deciding factor in the government's acceptance (R4, tab 125 at 2241, gov't br. at 7-8[7]).

*The Claim*:

20. On October 20, 2021, Herman resubmitted its November 12, 2020 request for reconsideration of its phasing proposal as a VECP which the Navy promptly denied (R4, tab 119 at 2227-28). On November 3, 2021, Herman submitted a Request for a Contracting Officer's Final Decision (the claim) for $156,748 asserting that its phasing proposal was a VECP and entitlement to 55% of the negotiated credit of $248,997 (R4, tab 30 at 1-2).

21. In a final decision dated January 3, 2022, the contracting officer denied Herman's claim (R4, tab 31 at 323). Accusing Herman of a "bait and switch," the contracting officer asserted that Herman did not submit all required information for a VECP and that no authorized representative accepted Herman's phasing plan so Herman should have performed in accordance with its contract (*id*. at 322-23). The contracting officer stated that she had sole discretion to accept or reject the VECP and could only accept the VECP through issuance of a notice to proceed or execution of a modification, neither of which occurred (*id.* at 321-22). On March 22, 2022, Herman filed an appeal with the Board which was docketed as ASBCA No. 63235.

---

[7] The government admits that it did not know the amount of the credit when considering Herman's phased approach and that monetary costs were not the deciding factor in acceptance of the approach (gov't br. at 7-8); however, the government argues that the credit was the "primary reason" that it "was willing to consider" phasing (*id.* at 27).

8

<u>DECISION</u>

***The Parties' Contentions:***

Herman asserts that it is entitled to share in the cost savings arising from its proposed phasing plan because the plan satisfied the requirements for a VECP pursuant to FAR 52.248-3 (app. br. at 10-15). It argues that the government authorized implementation of the phasing plan thereby waiving the requirements of FAR 52.248-3(c) (*id.* at 15-18). Alternatively, Herman contends that the government constructively accepted the VECP and should be estopped from denying such acceptance and its obligation to share the cost savings (*id.* at 19).

The government asserts that the Board is "not empowered to substitute its judgment" for that of the contracting officer and our review is limited to whether rejection of the VECP was arbitrary, capricious, or an abuse of discretion (gov't br. at 19-21). The government argues that Herman's phasing proposal did not meet the requirements for a VECP and was not identified as such until months after the change had been implemented (*id.* at 21-24). The government contends that Herman induced it to accept the phasing plan through the promise of full credit which was the "primary reason" the government was willing to accept the phasing plan (*id.* at 27). The government alleges that Herman breached the duty of good faith and fair dealing by denying the government the full credit arising from the change (*id.*). The government denies that it constructively accepted the VECP by allowing Herman to construct the project using its phased approach (*id.* at 2, 26-27).

***Standard of Review under Board Rule 11:***

Under Board Rule 11, the parties may waive a hearing and instead have the Board issue a decision based on the record. "Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board 'may make findings of fact on disputed facts.'" *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 20-1 BCA ¶ 37,702 at 183,031 (quoting *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,866 n.13).

***Burden of Proof:***

As with any contractor claim, Herman bears the burden of proving its monetary VECP claim against the government. *Sentara Health Sys.*, ASBCA No. 51540, 00-2 BCA ¶ 31,122 at 153,723. The Value Engineering clause "clearly sets forth specific requirements which a proposal must meet in order to qualify as a VECP." *Schnider's of OKC*, ASBCA No. 54327, 04-2 BCA ¶ 32,776 at 162,075. At a minimum, Herman "must show that it submitted a valid VECP and that the government accepted the

9

VECP." *Id.* at 162,076. "Mere allegations [of VECP savings] without added explanatory facts or outside substantiation or corroborative evidence supporting the statement are not sufficient to carry the necessary burden of proof." *C Constr. Co.*, ASBCA No. 47928, 96-2 BCA ¶ 28,499 at 142,313.

The Board has consistently recognized the discretion afforded a contracting officer to accept or reject a VECP. *See Schnider's of OKC*, 04-2 BCA ¶ 32,776 at 162,074. We may not substitute our judgment for the contracting officer's regarding whether to accept the VECP. *See Empire Energy Mgmt Sys., Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553. Our review of such discretionary actions is limited to consideration of whether the contracting officer's decision was arbitrary, capricious, or an abuse of discretion. *Id.*

However, whether a VECP, within the meaning of the clause, was submitted by the contractor and whether it was in fact accepted are proper questions for decisions by the Board. *Gulf Apparel Corp.*, ASBCA No. 27784, 89-2 BCA ¶ 21,735 at 109,267. We may consider complaints that a VECP "rejected in form was accepted in fact." *Id.*, (citing *Covington Indus., Inc.*, ASBCA No. 12426, 68–2 BCA ¶ 7286 at 45,702-03). Here, we consider Herman's claim that its VECP was rejected in form but accepted in fact.

### *What qualifies as a compensable VECP?*

While the government urges us to require strict compliance[8] with the language of FAR 52.248-3 (gov't br. at 21-23), such a standard is inconsistent with Board precedent. *See Airmotive Engineering Corp.*, ASBCA No. 17139, 74-2 BCA ¶ 10,696 at 50,871-72; *Gulf Apparel Corp.*, 89-2 BCA ¶ 21,735 at 109,266. In *Airmotive Eng'g Corp.*, 74-1 BCA ¶ 10,517 at 49,838, the Board stated,

> If any underlying philosophy may be said to run through the various decisions of this Board and the Court of Claims in the field of value engineering rewards, it is that the provisions of the Value Engineering Incentive Clause are to be liberally interpreted in favor of the contractor. As frequently explained in other opinions, this attitude represents merely a practical approach to derive maximum benefit for the Government from the value engineering program generally. If the sharing provisions were to be interpreted and administered strictly with an eye to holding

---

[8] The government relies heavily upon a decision from the Court of Federal Claims in *C.A. Rasmussen, Inc. v. United States*, 52 Fed. Cl. 345, 349 (Fed. Cl. 2002), which is informative but not binding precedent for this Board.

down rewards, the incentive to propose or urge adoption of money-saving devices and procedures would, for practical purposes, be eliminated, the flow of suggestions would dry up, and the program would die.

Liberal construction is "the cornerstone of the application of an 'enlightened' approach to value engineering proposals." *Northeastern Mfg. & Sales, Inc.*, ASBCA No. 38307, 90-1 BCA ¶ 22,562 at 113,229.

Since our decision in *Airmotive Eng'g Corp.*, the Board has continued its liberal approach to value engineering while honoring the two essential elements of a compensable VECP. First, a VECP must contain a proposed change to contract requirements for implementation. *WEDJ/Three C's, Inc.*, ASBCA No. 56672, 10- 1 BCA ¶ 34,315 at 169,499; *ICSD Corp.*, ASBCA No. 28028, 90-3 BCA ¶ 23,027 at 115,629, *aff'd*, 934 F.2d 313 (Fed. Cir. 1991) (a valid VECP presents "something different from what the Government has already required by the design specifications"). The Board has declined to recognize a VECP where the proposed change had been incorporated by modification prior to submission of a VECP. *Schnider's of OKC*, 04-2 BCA ¶ 32,776 at 162,077 (The contractor's change proposal was not a VECP where the change had been incorporated into the contract as an engineering change and subsequently identified as a VECP.); *NI Indus., Inc.*, ASBCA No. 29535, 87-2 BCA ¶ 19,688 at 99,658 ("After a cost reduction [proposal] is made a part of the contract it can no longer qualify as a VECP because there is no longer a required change.").

Second, a VECP must reduce the cost of work required under the contract. *Sentara Health Sys.*, ASBCA No. 51540, 99-1 BCA ¶ 30,323 at 149,957 (citing *B.F. Goodrich v. United States*, 398 F.2d 843, 847 (Ct. Cl. 1968) (the Value Engineering clause "does not apply to proposals or suggestions in general, but to proposals '*for variation from contractual requirements*.'" (emphasis in original)). A VECP must result in "savings" as defined by the Value Engineering clause. *See Dunn Constr. Co.*, ASBCA No. 48145, 97-2 BCA ¶ 29,103 at 144,841 ("[N]ot only must the VECP be accepted, but the instant contract savings must also be realized."); *Vemo*, ASBCA No. 31911, 88-3 BCA ¶ 20,977 at 105,999, *aff'd*, 878 F.2d 1446 (Fed. Cir. 1989) (Even assuming that the VECP had been constructively accepted, the appeal was denied because there was no reduction in the contractor's cost of performance.).

***Did Herman submit a compensable VECP?***

Here, we hold that Herman's phasing plan, on its face, meets the definition of a VECP. Eliminating nearly all temporary trailers and implementing phasing were changes to the contract (finding 3). Throughout the project, the parties consistently treated reduction of the temporary trailers and implementation of the phasing plan as a

11

change as demonstrated by the government's issuance of a proposed change/request for proposal under the task order and subsequent negotiations (findings 3-7). After submission of the VECP, the government unilaterally incorporated Herman's phasing plan into the contract through Modification No. P00002; however, the cost savings have never been incorporated into the contract through modification (findings 15, 17).

Additionally, we determine that the change resulted in a reduction to the contract price without impairing essential functions or characteristics. While the government's initial rejection of the VECP alleged some impairment to essential functions (finding 14), this assertion is not supported by the record because it is contradicted by the government's contemporaneous acceptance of phasing as part of the Final Design.[9] As awarded, Building 1737 was to be unoccupied during construction with all occupants moved to swing space somewhere else (findings 1-2). Herman's phasing plan allowed the administration staff to remain in place throughout Phase 1 and move temporarily into the newly renovated classroom space during Phase 2 (finding 3). Not only did the contracting officer accept phasing the next day through issuance of Modification No. P0002, but also none of the administration personnel would have been displaced in September 2020 since they were able to remain in place throughout Phase 1 which concluded November 30, 2020 (findings 3, 15, 18). The only personnel who should have been displaced as of September 2020 might have been personnel related to the classrooms since the temporary trailers were insufficient to serve as swing space for the entirety of Building 1737 and were only intended for "admin space" (finding 2). Ultimately, the project was completed using the phased approach, and the parties negotiated contract cost savings arising from this change (findings 15, 17-18).

Next, we consider whether Herman's proposal satisfies the requirements for a VECP under FAR 52.248-3. Herman's October 21, 2019 proposal described the proposed change to the contract requirements and identified some advantages to the government (finding 3). During design of the project, Herman provided greater detail regarding changes to the specifications and drawings associated with its proposal (*see generally* R4, tabs 40, 43, 47). Herman provided a detailed cost estimate on November 18, 2019, and several revised proposals during negotiations (findings 5, 7). Each proposal included estimates of costs associated with implementing phasing (finding 7). We note that the government was in a better position than Herman to identify any collateral or extra-contractual costs that it might incur associated with phasing. Notes from the November 21, 2019 design review meeting and Herman's December 11, 2019 RFI 008 both indicated that the phasing proposal was time sensitive (findings 6-7). Having incorporated the proposed phasing into its project

---

[9] The government does not seem to account for the fact that government personnel would be displaced either for the duration of the project in temporary trailers or for one phase of the project in the same building.

design, Herman reiterated the urgency of formal approval in June 2020 before proceeding with construction (finding 8).

Through its Notice of VECP on August 7, 2020, Herman effectively resubmitted its phasing plan as a VECP. At this point, Herman had submitted not only its October 23, 2019 phasing plan but also multiple design documents and cost proposals associated with the proposed phasing change (findings 3-7). While all VECP requirements were not captured in a single package but were provided piecemeal, we have "refused to undermine the enlightened objectives of the Government's value engineering policy by technicalities over the form of the value engineering submission" so long as the government is aware that it is evaluating a VECP prior to acceptance. *McDonnell Douglas Astronautics, Co*., ASBCA No. 19971, 76-2 BCA ¶ 12,117 at 58,209 (citations omitted); *see NI Indus*., 87-2 BCA ¶ 19,688 at 99,658. Here, the government was on notice August 7, 2020 that Herman's phasing plan was a VECP prior to accepting phasing on September 9, 2020 (findings 11, 15). Accordingly, we conclude that Herman's phasing plan satisfied the FAR 52.248-3 elements for a VECP.

Finally, we evaluate whether Herman's VECP satisfied the two essential elements of a compensable VECP. We have found that the VECP contained a proposed change to the contract for implementation. At the time Herman identified its phasing plan as a VECP in August 2020, no modification had been issued to reduce the trailers or incorporate phasing (finding 17). This fact renders Herman's VECP distinguishable from those rejected by the Board in *Schnider's of OKC*, 04-2 BCA ¶ 32,776 at 162,077, and *NI Indus., Inc.*, 87-2 BCA ¶ 19,688 at 99,658, which were submitted after modifications had already incorporated the changes. We discuss below the effect, if any, of the government's conditional acceptance of Herman's phasing plan.

We also conclude that Herman's VECP reduced the cost of the contract work. The cost savings negotiated by the parties demonstrates that the VECP reduced the cost of work required under the contract and resulted in savings as defined by the Value Engineering clause (finding 17).

***Did the government accept Herman's VECP? If so, when did acceptance occur?***

Herman argues that the government constructively accepted its VECP as a phasing plan and prior to its identification as a VECP (app. br. at 18-19). As support, Herman cites the government's response to RFI 008 and its approval of Herman's design and submittals implementing phasing throughout performance of the contract (*id.* at 17-18). The government asserts that, prior to notice of the VECP, it conditionally accepted Herman's phasing plan contingent upon receipt of the full credit associated with the change and argues that such acceptance of the phasing plan

precludes Herman's recovery for a VECP (gov't reply at 1, 6-7, 11). The government also contends that it did not have timely notice of Herman's VECP and could not accept a VECP of which it was unaware (*id.* at 6, 8-9). Finally, the government argues that only the contracting officer could accept the VECP through issuance of a notice to proceed or execution of a modification, not by simply allowing Herman to commence construction with a phased approach (*id.* at 6). We find the timing of the government's acceptance to be determinative.

First, we must address whether the government accepted Herman's phasing plan as a change prior to its identification as a VECP. We found that the government did not constructively accept Herman's phasing plan through its response to RFI 008 because the Senior CM lacked authority to change the contract (finding 9). We also reject the government's "conditional acceptance" of Herman's phasing proposal (finding 4) prior to notice that it was a VECP. "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *First Com. Corp. v. United States*, 335 F.3d 1373, 1381 (Fed. Cir. 2003) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 59 (1979)). Thus, we conclude that the government's response was a counter-offer and did not bind either party. The government's conditional acceptance of the phasing plan does not preclude Herman's identification of the phasing plan as a VECP.

To enjoy the benefits provided by the VE clause, it is not necessary that the contractor's cost-reduction proposal be submitted initially as a VECP under that clause. *B.F. Goodrich Co. v. United States*, 398 F.2d at 846-48. However, the government must be on notice that it is evaluating a VECP. In *Erickson Air Crane Co. of Washington, Inc. v. U.S.*, 731 F.2d 810 (Fed. Cir. 1984), the Court of Appeals for the Federal Circuit established what is required to put the government on notice that it is evaluating a VECP:

> [T]he contractor must *initiate* the proposal, *develop* the proposal, and *submit* the proposal *in writing*. The proposal also is *required* to "*contain a description* of the difference between the existing contract requirement and the proposed modification, *an itemized and detailed estimate* of the anticipated reduction in the contractor's costs, *the time within which a decision must be made* by the Government and other appropriate information."

> This required information, if properly presented, gives the government notice that it is evaluating a VE proposal. The government requires such notice so that it can make an intelligent and informed decision as to the nature and

14

> impact of a contractor's proposal before ruling upon it. If
> unaware that a contractor is submitting a VE proposal, the
> government is unable fully to consider and balance the
> effect of any decision it may reach.

*Id.* at 815-16 (emphasis in original). We have found that Herman initiated and developed the VECP in a series of documents that it submitted starting in October 2019 and that the government was on notice as of August 7, 2020, that Herman was submitting a VECP (findings 3-11).

Next, we consider the government's conduct once it was on notice that Herman's phasing plan was offered as a VECP. As of submission of the VECP in August 2020, the government had neither fully nor formally accepted Herman's phasing plan as a change to the contract. As previously discussed, the government's conditional acceptance was a counter-offer, and no modification had been executed to incorporate the change. Thus, Herman's submission of its phasing plan as a VECP in August 2020 was a new offer which the government could accept or reject.

When the government learned on August 7, 2020 that Herman's phasing plan was a VECP, renovation work was just under way and eleven months remained for Herman to complete the contract (findings 2, 13). At that point, the government could have rejected the phasing and demanded that Herman provide the trailers (finding 13) since Herman had proceeded with phasing, at its own risk. However, the government's response to Herman's VECP was contradictory as it rejected the VECP on September 8, 2020, in form only, but accepted the phasing plan and reduction of trailers on September 9, 2020, when the contracting officer executed Modification No. P00002 incorporating phasing into the contract as part of the Final Design (findings 14-15). While the government declined to recognize Herman's phasing plan as a VECP, the government officially adopted the phasing plan (*id.*).

Contrary to the government's assertion that the contracting officer may only accept a VECP through issuance of NTP or a modification, the Court of the Appeals for the Federal Circuit recognized constructive acceptance of a VECP "when the government, after rejecting a VECP, later implements substantially identical changes in the same contract." *John J. Kirlin, Inc. v. U.S.*, 827 F.2d 1538, 1541 (Fed. Cir. 1987). Similarly, we have also recognized constructive acceptance of a VECP. *See Gulf Apparel Corp.*, 89-2 BCA ¶ 21,735 at 109,269. In two prior cases, we have addressed facts similar to those presented by Herman. In *Sentara Health Sys.*, 00- 2 BCA ¶ 31,122 at 153,724, we recognized a valid VECP where the government, just days after rejecting a VECP, executed a modification incorporating the substance of the VECP as a change, instead of as a VECP. In *N. Am. Rockwell Corp.*, ASBCA No. 14485, 71-1 BCA ¶ 8773 at 40,737-38, we found that the government constructively accepted a contractor's VECP when it incorporated the substance of a

VECP through change order but rejected the VECP. In *B.F. Goodrich Co. v. U.S.*, 398 F.2d at 848, the Court of Claims held that the Value Engineering clause, when applicable, takes precedence over the Changes clause. If the government accepts and incorporates the contractor's proposal into the contract, the contractor becomes entitled to its share of the savings, and the government "cannot deprive the contractor of that benefit by issuance of a change order to any other effect." *Id.*

Here, the government made Herman's phasing plan part of the contract when the contracting officer unilaterally modified the contract to incorporate the Final Design (finding 15). This modification adopted the substance of Herman's VECP—its phasing plan and trailer reduction (*id.*). When the contracting officer executed Modification No. P00002 just one day after rejecting the VECP, she did so with full knowledge that Herman considered its phasing plan to be a VECP (findings 14-15). Through this action, the government constructively accepted Herman's VECP. Thus, we conclude that the government rejected Herman's VECP, in form, but accepted it, in fact.

While Herman's constructive acceptance argument focuses on government acquiescence and informal adoption of the phasing plan (app. br. at 15-18) rather than the effect of Modification No. P00002, the Board is not restricted to considering only the evidence or legal theories presented to a contracting officer because our proceedings under the Contract Disputes Act are wholly *de novo*. *See J.S. Alberici Constr. Co. & Martin K. Eby Constr. Co., JV*, ENGBCA No. 6178, 98-2 BCA ¶ 29,875 at 147,916 (quoting *Laidlaw Environmental Services (GS), Inc.,* ASBCA No. 45365, 93-3 BCA ¶ 26,128 at 129,884. As stated *supra*, Modification No. P00002 which embodies the government's constructive acceptance of Herman's VECP was included in the record.

Based on the foregoing, the government's remaining arguments are unavailing.

<u>CONCLUSION</u>

For the reasons stated herein, the appeal is sustained. Accordingly, the matter is returned to the parties for resolution of quantum.

Dated: May 9, 2024

LAURA J. ARNETT
Administrative Judge
Armed Services Board
(Signatures continued)                          of Contract Appeals

16

I concur                                I concur


OWEN C. WILSON                          MICHAEL N. O'CONNELL
Administrative Judge                    Administrative Judge
Acting Chairman                         Vice Chairman
Armed Services Board                    Armed Services Board
of Contract Appeals                     of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63235, Appeal of Herman JCG Co. JV., rendered in conformance with the Board's Charter.

Dated: May 9, 2024


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

17